## COMMONWEALTH *vs.* PATRICIA CHEROMCKA.

No. 04-P-1065.

Bristol. December 9, 2005. - July 19, 2006.

Present: LENK, BROWN, & GREEN, JJ.

*Larceny. False Pretenses. Evidence,* Opinion. *Words,* "Property."

At the trial of indictments charging larceny, the Commonwealth was not required to elect its theory of the manner in which the larcenies were committed. [773-775]

Discussion of the standard employed when reviewing the sufficiency of the evidence at a criminal trial. [776]

At the trial of an indictment charging larceny, arising from the defendant's falsification of school bus drivers' time sheets after the drivers performed personal errands for the defendant, the evidence was sufficient to prove that the defendant obtained a school district's property within the meaning of G. L. c. 266, § 30, when the school district paid the bus drivers money for services rendered to the defendant, for which she otherwise would have had to pay. [776-779]

At the trial of an indictment charging larceny, arising from the defendant's use of a school district's credit card for personal expenditures, the evidence was sufficient to establish that the defendant's approval of credit card bills that were then submitted to the school committee for payment was an implied misrepresentation that the items purchased were intended for school use, and that the defendant intended that the school district would rely on that misrepresentation. [779-782]

The evidence at a criminal trial was not sufficient to establish larceny arising from the defendant's misappropriation from a school district of travel money, where there was no evidence that the defendant, at the time she took an advance, intended to deprive the school district of that advance. [782]

The evidence at a criminal trial was sufficient to establish larceny arising from the defendant's misappropriation of a petty cash fund, where the jury could have found that the defendant had obtained a school district's property by misrepresenting in vouchers the amounts that had been expended for school-related purchases. [782-784]

At a criminal trial, there was sufficient evidence to convict the defendant of larceny arising from the stealing of soda money from a school district bus depot, where there was testimony that the defendant took soda money and that the school district did not receive it from her. [784-785]

No substantial risk of a miscarriage of justice arose at a criminal trial from the admission in evidence of a certain witness's testimony, where the witness

testified as to her extensive credentials and substantial experience and was impliedly determined by the judge to be qualified to testify as an expert witness as to matters within her area of expertise; where opinions that the witness gave were permissible explanations on topics within her area of expertise; where the subject area of her testimony was one that is normally outside the common experience of jurors, and the witness's testimony therefore served to explain the subject; and where the judge's standard instruction to the jury that they were the sole judges of credibility was sufficient. [785-788]

INDICTMENTS found and returned in the Superior Court Department on March 29, 2002.

The cases were tried before *Richard J. Chin,* J.

*James L. Sultan* (*Jonathan P. Harwell* with him) for the defendant.

*Steven E. Gagne,* Assistant District Attorney (*Garrett R. Fregault,* Assistant District Attorney, with him) for the Commonwealth.

LENK, J. After trial by jury, the defendant, Patricia Cheromcka, was convicted of two counts of larceny over $250 and one count of larceny under $250. G. L. c. 266, § 30. She was acquitted of conspiracy to commit larceny in violation of G. L. c. 274, § 7. The charges stemmed from Cheromcka's alleged misuse of school funds in the period between April 1, 1996, and May 31, 2000, when she was the business manager and director of transportation for the Southeastern Regional Vocational-Technical School District (district). As business manager, Cheromcka was responsible for the day-to-day operations of the district's business office; her duties included, among other things, obtaining supplies and equipment, approving purchase orders and bills, and maintaining a petty cash fund. In her capacity as director of transportation, she supervised the district bus drivers and their direct supervisor, Barbara Ataman.

The grand jury returned three larceny indictments. As reflected in the bill of particulars, the first alleged that Cheromcka committed larceny by falsifying bus drivers' time sheets to reimburse the drivers for running her personal errands. The second indictment alleged that she stole cash from the sale of soda at the school bus depot. The third indictment was in three parts alleging that she (a) used her school district credit card

for personal expenditures; (b) misappropriated district travel funds; and (c) submitted falsified vouchers to replenish the petty cash fund from which Cheromcka pocketed cash.

On appeal, Cheromcka claims error in two respects. First, she maintains that the evidence was insufficient to support guilty findings on the three charges of larceny. Second, she contends that certain opinion testimony was admitted in error and created a substantial risk of a miscarriage of justice.

I. *Sufficiency of the evidence.* General Laws c. 266, § 30, inserted by St. 1945, c. 282, § 2, provides, in pertinent part: "Whoever steals, or with intent to defraud obtains by a false pretense, or whoever unlawfully, and with intent to steal or embezzle, converts, or secretes with intent to convert, the property of another as defined in this section, whether such property is or is not in his possession at the time of such conversion or secreting, shall be guilty of larceny . . . ." Section 30 merged into one crime, larceny, what had formerly been three separate crimes: larceny by stealing, embezzlement, and larceny by false pretenses. *Commonwealth* v. *Mills*, 436 Mass. 387, 391-392 (2002). Larceny can be established by evidence warranting a conviction on any of the three theories. *Ibid.* See *Commonwealth* v. *Williams*, 63 Mass. App. Ct. 615, 620 n.7 (2005).

The first and third indictments were submitted to the jury on a theory of false pretenses, while the second went on a theory of larceny by stealing. Although claiming that the evidence was insufficient to support any of the indictments, Cheromcka takes particular aim at the first and third indictments for having gone to the jury on the wrong theory of larceny. The thrust of the Commonwealth's case on these indictments, she claims, is that Cheromcka was legally responsible for district funds which she misappropriated for her own use. This is classic embezzlement, but embezzlement was not the theory on which the first and third indictments went to the jury. They went instead on false pretenses, as to which the evidence, she argues, was simply insufficient to sustain the convictions. *Commonwealth* v. *Mills*, *supra* at 397-399.

As a threshold matter, we dispose of Cheromcka's argument that, because the Commonwealth's theory before and during

trial was impliedly embezzlement, it cannot on appeal rely on a theory of larceny by false pretenses. All that need occur is that the evidence adduced at trial be sufficient to prove the elements of any of the three theories of larceny and that the jury be instructed on the theory of larceny as to which sufficient evidence was adduced at trial. *Id.* at 392. That happened here. The Commonwealth is not required to "elect its theory of the manner in which the . . . larcenies were committed. . . . 'Where a crime can be committed in any of several ways, . . . the defendant should be convicted if it is proved that he committed the crime in any of those ways.' " *Id.* at 392-393, quoting from *Commonwealth* v. *Liberty,* 27 Mass. App. Ct. 1, 9 (1989).[1] Neither the indictment nor bill of particulars need articulate a particular theory of larceny. See *Commonwealth* v. *Mills, supra* at 393. See also *Commonwealth* v. *Nadal-Ginard,* 42 Mass. App. Ct. 1, 5 (1997). It is sufficient that the jury be instructed as to a particular theory of larceny, as a "criminal conviction cannot be affirmed on appeal where the jury were not instructed on the elements of the theory of the crime." *Commonwealth* v. *Mills, supra* at 398. Here, the Commonwealth did not elect a theory of larceny as to any of the indictments until the end of trial, just prior to jury instructions. At that point, it elected larceny by false pretenses as to the first and third indict-

---

[1]By merging the previously separate crimes of larceny into one offense, the Legislature "intended to do away with the possibility of a criminal indicted for one of the three crimes mentioned escaping punishment by reason of its being afterwards found that his crime was technically one of the other two mentioned. . . . The only way in which this reformatory intent can be effectuated is to allow the jury, upon the material facts which are the ground of a charge of larceny, to consider whether these facts show a taking of money or other property, by trespass from the possession of its owner, a fraudulent conversion of it while properly in the possession of the wrongdoer, or an obtaining of it by criminal false pretenses, — in either case, of course, accompanied by the necessary criminal intent, — and in either of these cases to convict of the larceny. To require the Commonwealth to elect [a specific theory] in such a case would be to continue to afford an opportunity to frustrate the ends of justice . . . ." *Commonwealth* v. *King,* 202 Mass. 379, 388-389 (1909). See G. L. c. 277, § 41 ("[i]n an indictment for criminal dealing with personal property with intent to steal, an allegation that the defendant stole said property shall be sufficient; and such indictment may be supported by proof that the defendant committed larceny of the property, or embezzled it, or obtained it by false pretenses"). See also *Commonwealth* v. *Nadal-Ginard,* 42 Mass. App. Ct. 1, 6 (1997).

ments and larceny by stealing as to the second. The judge's instructions as to each, including larceny by false pretenses, were "full, fair and clear as to the issues to be decided by the jury, the rules to be followed . . . , and the law they [were] to apply." *Id.*, quoting from *Pfeiffer* v. *Salas*, 360 Mass. 93, 100 (1971). Hence, the jury had before them the applicable elements of the crime.[2],[3]

---

[2]*Commonwealth* v. *Mills*, *supra*, and *Commonwealth* v. *Nadal-Ginard*, *supra*, make clear that the Commonwealth need not articulate *any* particular theory of larceny during trial, as long as there is evidence sufficient to allow a jury to convict on the elements upon which they are instructed. In *Mills*, the judge's denial of a required finding of not guilty was upheld because a rational trier of fact could have found sufficient evidence to convict on larceny by false pretenses. *Commonwealth* v. *Mills*, *supra* at 397. The defendant's convictions nevertheless could not stand because the jury had been instructed only on larceny by stealing, as to which the evidence was insufficient. *Id.* at 399. In *Nadal-Ginard*, the defendant claimed that the jury were improperly allowed to consider larceny by false pretenses, with which he had not been expressly charged. *Commonwealth* v. *Nadal-Ginard*, *supra* at 4. Since the jury had been instructed on both embezzlement and false pretenses, the conviction could stand since it was supportable "by evidence that the defendant's theft was committed in any manner condemned by the law." *Id.* at 6.

[3]Cheromcka relies on *Dunn* v. *United States*, 442 U.S. 100, 106 (1979), and *Cola* v. *Reardon*, 787 F.2d 681 (1st Cir.), cert. denied, 479 U.S. 930 (1986), for the proposition that her constitutional right to due process was violated when the theory relied upon on appeal differed from that presented at trial. Her reliance is misplaced. In both cases, the theory on appeal was the same as that presented at trial. Rather, in each case, the allegedly criminal *conduct* relied upon on appeal was different from the acts or theory of guilt that was the focus of the evidence at trial. The United States Court of Appeals for the Tenth Circuit and the Massachusetts Appeals Court, respectively, affirmed the defendants' convictions based on conduct only incidentally or peripherally mentioned at trial. See *Dunn* v. *United States*, *supra* at 106; *Cola* v. *Reardon*, *supra* at 687. (The defendant in *Cola* appealed from a denial of a habeas petition filed in the United States District Court for the District of Massachusetts to challenge his State court conviction. See *Cola* v. *Reardon*, *supra* at 683.) The United States Supreme Court and the United States Court of Appeals for the First Circuit, respectively, reversed, holding that an appellate court cannot affirm a conviction on grounds that were not alleged in the indictment or were only incidental to the theory of guilt presented at trial. See *Dunn* v. *United States*, *supra* at 106-107; *Cola* v. *Reardon*, *supra* at 693. In this case, however, the acts underlying the charges against Cheromcka were explicitly recited in the bill of particulars and presented at trial. Although the Commonwealth did not elect the theory of larceny by false pretenses as to two of the indictments until all the evidence was in, the jury were appropriately instructed as to its elements; that was sufficient. See note 2, *supra*; *Commonwealth* v. *Mills*, *supra* at 397.

*Standard of review.* We review the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). See *Commonwealth* v. *Arroyo*, 442 Mass. 135, 139-140 (2004) ("we must determine whether the evidence presented at trial, together with all reasonable and possible inferences that might properly be drawn from it, was sufficient to permit a rational jury to find beyond a reasonable doubt the existence of every essential element of the crimes charged").

*Indictment one. Larceny by false pretenses: falsifying bus drivers' time sheets.* "[P]rosecution for larceny by false pretenses requires proof that (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." *Commonwealth* v. *Williams*, 63 Mass. App. Ct. at 620, quoting from *Commonwealth* v. *Mills, supra* at 396-397. The gravamen of the crime is that the victim's reliance on the swindler's misrepresentation causes the victim to part with his property. See *Commonwealth* v. *Williams, supra* at 621-622.

The district had a fleet of buses used not only to pick up and deliver children, but also for field trips and sporting events, runs to the bank, and other school-related business; for most trips drivers were paid an automatic minimum.[4] Three drivers testified that they frequently ran personal errands for Cheromcka,[5] for which extra hours were added to their time sheets; the

---

[4]For example, a weekend sports event was automatically billed as six hours, while a weekday sports event was billed as four hours; regular bus drivers automatically received two hours for morning pickup and afternoon delivery. There was conflicting testimony whether other trips, such as health service runs, satellite runs, and late runs, had a guaranteed minimum or were paid by the hour.

[5]The errands included, among other things, depositing money in Cherom-

additional compensation was reflected in their district paychecks.[6] Thus even if a driver ran a personal errand for Cheromcka within the automatic pay period, there were times when Cheromcka added extra hours to the time sheet above and beyond that automatic minimum.[7] Cheromcka claims that the Commonwealth failed to prove larceny by false pretenses since (1) her initials on the bus drivers' time sheets did not constitute false representations; (2) there is no evidence that the district relied on her initials; and (3) she did not obtain any property.

Cheromcka's first two contentions need not detain us. The addition of extra hours on the time sheets constituted "a bill for labor [which] may be found to be an implied representation that the charges are correct," *Commonwealth* v. *Louis Constr. Co.*, 343 Mass. 600, 604 (1962), and "could reasonably have been found to have set in motion a course of procedures by which the misrepresentations of the invoices (through an unbroken chain of causation) eventually influenced" the district. *Commonwealth* v. *Leonard*, 352 Mass. 636, 645 (1967).

The matter is more nuanced as to Cheromcka's third contention, i.e., that her conviction cannot stand because she did not obtain "property" within the meaning of the common law or G. L. c. 266, § 30.[8] That the school district parted with property in the form of money is not at issue; it paid the drivers for the

---

cka's bank, delivering and picking up film and photographs, buying a shower stall seat for her elderly father, picking up her dry cleaning, and so on.

[6]Each driver filled in her own time sheet listing the hours, actual or automatic minimum, for which she was to be paid. If a driver's entry needed to be corrected, that was done in the business office. Each time sheet was signed by the driver and the supervisor, in this case Ataman, and finally initialed by Cheromcka.

[7]Two of the drivers, Joy Berube and Anna Fay Cavallero, brought to Cheromcka's attention the additional hours on their time sheets; she told them not to worry about it.

[8]General Laws c. 266, § 30, as amended through St. 1995, c. 272, § 3, defines "property" as including "money, personal chattels, a bank note, bond, promissory note, bill of exchange or other bill, order or certificate, a book of accounts for or concerning money or goods due or to become due or to be delivered, a deed or writing containing a conveyance of land, any valuable contract in force, a receipt, release or defeasance, a writ, process, certificate of title or duplicate certificate issued under chapter one hundred and eighty-five, a public record, anything which is of the realty or is annexed thereto, a security deposit received pursuant to section fifteen B of chapter one hundred and eighty-six, electronically processed or stored data, either tangible or

extra hours that Cheromcka added to their time sheets. Cherom-cka, however, directs our attention to the question whether larceny by false pretenses may lie when what she obtained — services — is not itself property.

Ordinarily, of course, the very property with which the victim has been induced to part is what ends up in the hands of the swindler. See, e.g., *Commonwealth* v. *Mills, supra* at 397; *Commonwealth* v. *Nadal-Ginard*, 42 Mass. App. Ct. at 8; *Commonwealth* v. *Lepper*, 60 Mass. App. Ct. 36, 42 (2003). Nonetheless, larceny by false pretenses may "encompass[] more than direct dealings between the defendant and the defrauded party." *Commonwealth* v. *Williams*, 63 Mass. App. Ct. at 622. See *Commonwealth* v. *Mycock*, 315 Mass. 262, 266-267 (1943); *Commonwealth* v. *Hamblen*, 352 Mass. 438, 443 (1967).[9]

Cheromcka relies on *Commonwealth* v. *Rivers*, 31 Mass. App. Ct. 669 (1991), and *Commonwealth* v. *Geane*, 51 Mass. App. Ct. 149 (2001), for the proposition that fraudulent inducement of services is not larceny. Neither case is controlling here. In *Rivers*, we held that larceny did not lie where a contractor used a town landfill for dumping without paying the town the requisite fee. Such unauthorized use, we concluded, is not "property" that may be the subject of larceny. *Commonwealth* v. *Rivers, supra* at 670-671. In *Geane*, we held that a contractor who induced subcontractors to provide construction services on the false promise of later payment could not be liable for larceny because such services are not "property" within G. L. c. 266, § 30, or the common law. *Commonwealth* v. *Geane, supra* at 154. In each case, the victim — the town and the subcontractors, respectively — did not part with any "property" that could be the subject of larceny. That is unlike the case now before us where the district did part with property — it paid the bus drivers money for services rendered not to the district but to Cher-

intangible, data while in transit, telecommunications services, and any domesticated animal, including dogs, or a beast or bird which is ordinarily kept in confinement."

[9] We note that on the evidence before the jury, the bus drivers cannot be considered coconspirators, as there was no evidence that they possessed the requisite intent to defraud the district or conspire in any way with Cheromcka to do so; to the contrary, at least two drivers brought to Cheromcka's attention their concern that they were being overpaid. See note 7, *supra*.

omcka, for which services she herself would otherwise have had to pay. Not to put too fine a point on it: what Cheromcka stole, albeit indirectly, was the district's money. The evidence before the jury that she knowingly falsified the bus drivers' time sheets and that the district, relying on those falsifications, parted with property in the form of money sufficed to support her conviction of larceny by false pretenses.

*Indictment three (a). Larceny by false pretenses: credit card use.* The purchase of supplies and materials for the district was subject to a multistep approval process[10]; this approval process was not required, however, for purchases made using the school's credit cards. All bills for school-related purchases, whether made through the purchase order process or by use of credit cards, came directly to Cheromcka. It was part of Cheromcka's job as business manager to approve such bills before forwarding them to the accounts payable clerk, her subordinate, for submission to the school committee as part of a warrant requiring committee approval.

Cheromcka was authorized to use two district credit cards, one issued by American Express and another by MasterCard; Cheromcka testified that both were issued to the Southeastern Regional School District, but it is unclear whether both names, the district's and Cheromcka's, were on the cards.[11] After James Hager became the district superintendent in September, 1998, he reviewed the district's credit card bills and noticed that while the bills from the credit cards issued to Cheromcka had been paid, there were no corresponding receipts for the items charged.

[10]The requester would fill out a purchase order detailing the materials, the amount, and the purchase price; a supervisor, the principal, the business manager, and the superintendent were all required to approve the order before it was sent to the vendor. After the requested materials were received by the school, the bill required approval by the business manager before it became part of a "warrant," which was submitted to the school committee at its monthly or bimonthly meetings. Once the warrant was approved by the committee, the accounts payable clerk for the district would issue checks to the vendors whose bills had been approved.

[11]There was testimony that the card issued by MasterCard had the district's name on it while the one issued by American Express was in Cheromcka's name. The record is silent whether Cheromcka's name was also on the card from MasterCard, or the district's name also on the American Express card.

Cheromcka agreed to provide the receipts, but when Hager later reviewed what Cheromcka had provided, he noticed that some receipts did not describe the purchases, some were "rather strange,"[12] and others were for purchases made in New Hampshire.[13] He could not account for at least one purchase — a Christmas tree that Cheromcka claimed she had purchased for the school's restaurant, the Colonial Room; Hager testified that, in response to his inquiries, he found no employee who had seen the tree. In addition, there was testimony that Cheromcka paid for a birthday dinner for Ataman and friends with the district card.[14]

The Commonwealth contends that, by signing the credit card slips, Cheromcka falsely represented to the district that the charges were for legitimate school expenditures. This is unpersuasive. Cheromcka's signature only represents the cardholder's intention to repay the issuer.[15] See *Citibank (S.D.), N.A.* v. *Hansbury*, 128 B.R. 320, 321 (Bankr. D. Mass. 1991). See also *MBNA America Bank, N.A.* v. *Ashland*, 307 B.R. 317, 322 (Bankr. D. Mass. 2004) (credit card transaction is contract wherein cardholder promises to reimburse card issuer for purchases charged). Since the district did pay the issuer, Cheromcka's signature cannot be considered a misrepresentation, let alone a misrepresentation made to the district.

The Commonwealth also asserts that use of the credit cards for personal purchases is outside the scope of authority granted Cheromcka by the district. There is nothing in the record,

---

[12]For example, one purchase was from a housewares store and another from a liquor store.

[13]Cheromcka had a second home in New Hampshire. She testified that she often bought various school supplies in New Hampshire to avoid the time-consuming process of proving the district's tax-exempt status in Massachusetts stores; she explained that the liquor was used for the school's culinary program.

[14]The testimony does not indicate if Cheromcka used the American Express or the MasterCard credit card.

[15]A "cardholder" is defined in G. L. c. 266, § 37A, inserted by St. 1969, c. 832, as "the person named on the face of a credit card to whom or for whose benefit the credit card is issued by an issuer." The cards here were issued for the benefit of the district, the district paid the bills, and Cheromcka testified that both cards were issued to the district. We therefore conclude that the district was the cardholder, regardless of the lack of evidence whether the district's name was on the American Express card.

however, to indicate that Cheromcka made any representation to the district that she would use the credit card solely for school-related purchases. While this is perhaps a permissible inference, so too would be the inference that Cheromcka could use the card for personal expenditures as long as she subsequently reimbursed the district.

While neither Cheromcka's signature nor her use of district credit cards to make personal purchases establishes the misrepresentation necessary to prove larceny by false pretenses, the evidence is otherwise as to her approval of the credit card bills. A false statement of fact "may be made by implication as well as by verbal declaration." *Commonwealth* v. *Louis Constr. Co.*, 343 Mass. at 604. See *Commonwealth* v. *Reske*, 43 Mass. App. Ct. 522, 525 (1997) ("false pretense may consist of an act, symbol, or token calculated to deceive"). A bill submitted that the defendant knows to be incorrect "constitutes a false presentation . . . sufficient to support a conviction of larceny by false pretenses." *Commonwealth* v. *Borans*, 379 Mass. 117, 144 (1979). Cheromcka's approval of credit card bills that were then submitted to the school committee for payment was an implied misrepresentation that the items purchased were intended for school use. It may be fairly inferred that, before approving the bills for payment, Cheromcka would review them and would know that some charges reflected her personal purchases.

Given this and Cheromcka's longstanding involvement with and knowledge of the approval process, there was sufficient evidence to establish that Cheromcka had knowingly made a false statement of fact intending that the school district would rely upon it. See *Commonwealth* v. *Iannello*, 344 Mass. 723, 735-736 (1962) (intent to deceive properly found given defendant's familiarity with submission process, falsity of bill, and knowledge of its falsity; determination of intent is to be resolved by jury in light of all attendant circumstances). See also *Commonwealth* v. *Kiernan*, 348 Mass. 29, 46-47 (1964), cert. denied sub nom. *Gordon* v. *Massachusetts*, 380 U.S. 913 (1965).

It is evident from the district's payment of the credit card bills that it relied on Cheromcka's misrepresentation that the

credit card bills, which she approved, reflected charges that were incurred for school-related purposes; the district consequently parted with property. See *Commonwealth* v. *Reske, supra* at 524. In so doing, the district paid for Cheromcka's personal purchases and discharged her personal debt. See *MBNA America Bank, N.A.* v. *Ashland, supra* at 322. The evidence accordingly suffices to sustain the conviction for larceny by false pretenses as to her use of the district credit cards.

*Indictment three (b). Larceny by false pretenses: misappropriation of travel money.* Cheromcka was one of several district employees and school committee members who attended a conference in Florida in February, 1998. The superintendent at that time advanced all the district's other attendees $400 for small cash expenditures; he advanced Cheromcka an additional $1,000. She testified that she took a larger advance because she was responsible for paying some of the expenses of others on the trip; there were, however, no receipts specifying what expenses accounted for the $1,400 Cheromcka received. The Commonwealth claims that Cheromcka misappropriated the money for her personal use.

A defendant who acquires the property of another by virtue of a promise, and then changes her mind and converts that property to her own use, cannot be convicted of larceny by false pretenses absent proof of an intention to deprive at the time of the representation. See *Commonwealth* v. *True*, 16 Mass. App. Ct. 709, 711 (1983); *Commonwealth* v. *Stovall*, 22 Mass. App. Ct. 737, 741 (1986). Although the jury could infer that, when she took the $1,400, Cheromcka promised to use it for school-related purposes, there is no evidence of record showing that she did not in fact do so. Even if she did use the money for personal purchases, there is no evidence that, at the time she took it, she intended to use it for nonschool purposes. A mere failure to fulfil a promise does not constitute a misrepresentation, *Commonwealth* v. *True, supra* at 711-712; absent any indication of Cheromcka's intention to deprive the district at the time she accepted the advance, her conviction of larceny by false pretenses for misappropriating travel money cannot stand.

*Indictment three (c). Larceny by false pretenses: petty cash fund.* As business manager, Cheromcka was in charge of the

district's petty cash fund, which was maintained at $300. The fund was used to pay for, or reimburse payments made for, small purchases as to which a purchase order would be too cumbersome and time-consuming. Typically, Cheromcka would total the amount removed from petty cash each month, represented by receipts, and, when the fund was depleted, fill out a voucher — a request for payment — in that amount; the voucher was then attached to the monthly warrant submitted to the school committee. Once the committee had approved the warrant, the accounts payable clerk forwarded to Cheromcka a check made out to petty cash to replenish the fund; Cheromcka thereafter endorsed the check and, it may be inferred, cashed it.

In February, 1999, Hager reviewed the petty cash fund file and found vouchers, many in excess of $1,000, for the monthly reimbursements; no receipts, however, were attached. Although Cheromcka then agreed to submit the relevant receipts, when Hager checked about two weeks later he found some vouchers without receipts, and six of the original vouchers missing. Cheromcka represented that she had put all her receipts in the file and did not know the whereabouts of the missing vouchers. A subsequently generated computer printout of the total petty cash expenditures indicated that in fiscal year 1997,[16] the petty cash fund was reimbursed in the amount of $23,559.73; in 1998 it was reimbursed $32,899.58; in fiscal year 1999 the reimbursement fell to $12,807.60.[17] Karen Roberts, a certified public accountant and certified fraud examiner retained by the district in May, 2000, testified that Cheromcka's personal bank account contained approximately $55,000 which could not be accounted for by traceable deposits such as salary checks, Social Security payments, or transfers from other accounts.

Cheromcka contends that the vouchers represent promissory statements that the money to be received would be used for district purposes and as such are not misrepresentations. See *Commonwealth* v. *True*, *supra* at 711. The flaw in her character-

[16]The school's fiscal year ran from July to June. Fiscal year 1997 encompassed the period from July 1, 1996, to June 30, 1997.

[17]Hager's investigation into Cheromcka's possible misuse of school funds began in December, 1998; he started reviewing the petty cash fund file in February, 1999. Fiscal year 1999 ran from July 1, 1998, to June 30, 1999.

ization, however, is that the vouchers functioned as a means of replenishing the petty cash fund. Hence, the vouchers were representations that district money had *already been spent* for school-related purposes.[18]

There was evidence before the jury that (1) the vouchers that Cheromcka prepared and submitted with the warrant were for the purpose of replenishing the fund which had been depleted in order to reimburse for school-related expenditures already made; (2) checks were made out to the petty cash fund in amounts corresponding to the vouchers; (3) several receipts and six vouchers were missing[19]; (4) the petty cash fund was designed for small purchases and capped at $300; (5) for fiscal years 1997 through 1999 the fund was reimbursed in the amount of approximately $69,000; and (6) during that same period unaccounted for deposits to Cheromcka's personal bank account totaled $55,000. The jury could have found that Cheromcka had obtained the district's property by misrepresenting in the vouchers the amounts that had been expended for school-related purchases. See *Commonwealth v. Kiernan*, 348 Mass. at 47 (jury could reasonably infer from all relevant circumstances that defendant knew and intended that victim would rely on false statement and bank would transfer money). The evidence was therefore sufficient to sustain a conviction of larceny by false pretenses as to Cheromcka's misappropriation of the petty cash fund.[20]

*Indictment two. Larceny by stealing: bus depot soda money.*

[18]The vouchers in evidence, some of which are typed and some of which are handwritten, direct that payment be made to "Petty Cash — District." Amounts requested between July, 1996, through December, 1998, ranged from $345.27 to $1,864.85. One voucher described payment for "Misc. expenses for shops and offices," while all the others were endorsed "Supplies — All Shops." The plain language of the vouchers indicates that the money requested was used for school-related purposes. While the vouchers are not signed or initialed by Cheromcka, she does not contest the evidence that she was responsible for filling them out and submitting them with the warrants.

[19]In contrast, the jury had before them vouchers from the superintendent's petty cash fund, all of which were accompanied by receipts.

[20]The special verdict slip for indictment three indicated that the jury found Cheromcka guilty on all three charges. Although we conclude that, as matter of law, there was insufficient evidence to convict her of larceny by false pretenses regarding the travel money, Cheromcka conceded that the conviction on indictment three would stand should there be sufficient evidence as to any

Cans of soft drinks were kept in a refrigerator at the district's bus depot for purchase by the twenty-six or so district bus drivers; the drivers would take a soda and put money, usually thirty to thirty-five cents, in a nearby small container. Donna Gramazio, one of the drivers, testified that she saw Ataman or Cheromcka collect the money from the container on a daily basis from 1996 to 1999 and place it in a manila envelope which she put into her pocketbook. Although the amounts collected are unclear, for the months when the cash was tallied the amounts ranged from twenty-five to forty-four dollars.

In late 1999, Gramazio took over as supervisor of transportation, regularly collected the soda money herself, and delivered it to Cathy Spurr, the accounts receivable clerk for the school from 1988 to 2000. At a February, 2000, school committee meeting, Cheromcka explained that she had collected the soda money and turned it over to Spurr or Gramazio; Spurr testified that she never received the cash during Cheromcka's tenure as director of transportation, first receiving it when Gramazio took over that portion of Cheromcka's duties in late 1999.

Cheromcka argues that there was insufficient evidence to convict her of larceny by stealing the bus depot soda money. To constitute larceny by stealing, there must be evidence of an unlawful stealing of the personal property of another with the intent to deprive that person permanently. *Commonwealth* v. *Christian*, 430 Mass. 552, 558 (2000). Inferences drawn from the evidence "need only be reasonable and possible, not necessary or inescapable." *Commonwealth* v. *Arroyo*, 442 Mass. at 140. There was testimony that Cheromcka took soda money and that the district did not receive it from her. Viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth, the evidence was sufficient to permit a rational jury to conclude that Cheromcka stole the soda money.

II. *Admission of opinion testimony.* Karen Roberts, the certified public accountant and certified fraud examiner retained by

one of the three factual bases for the conviction. On the special verdict form, the jury indicated that they found Cheromcka guilty of larceny by false pretenses as to each of the three factual scenarios — a, b, and c — alleged in indictment three. The judge gave a proper unanimity instruction. See *Commonwealth* v. *Santos*, 440 Mass. 281, 284-285 (2003).

the district to examine the district's records, testified at trial about her investigation and findings. Cheromcka claims error in the admission of certain of her testimony in four respects: (1) Roberts was not qualified as an expert witness and could only give percipient testimony as a lay witness; (2) even if the judge impliedly qualified Roberts as an expert witness, her testimony exceeded the scope of permissible expert testimony; (3) Cheromcka's testimony regarding the amount deposited to Cheromcka's bank account coupled with her testimony as to the amount missing from the petty cash fund over the same period was unfairly prejudicial; and (4) the judge failed to give the jury adequate instructions regarding expert testimony. Because Cheromcka did not object at trial to Roberts's testimony, our review is limited to ascertaining whether any of her claims of error gives rise to a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Colon*, 64 Mass. App. Ct. 303, 311 (2005).

Cheromcka's first contention fails for the reason, if no other, that Roberts testified as to her extensive credentials and substantial experience in auditing school districts and was impliedly determined by the judge to be qualified to testify as an expert witness as to matters within her area of expertise. See *Commonwealth* v. *Boyd*, 367 Mass. 169, 183 (1975); *Commonwealth* v. *Rivera*, 425 Mass. 633, 644 (1997). " 'The crucial issue,' in determining whether a witness is qualified to give an expert opinion, 'is whether the witness has sufficient "education, training, experience and familiarity" with the subject matter of the testimony.' " *Commonwealth* v. *Richardson*, 423 Mass. 180, 183 (1996), quoting from *McLaughlin* v. *Selectmen of Amherst*, 422 Mass. 359, 361-362 (1996).

In challenging Roberts's testimony as having exceeded permissible bounds, Cheromcka maintains that the testimony (to the effect that it was "unusual" for a petty cash fund to contain a large amount of money, and for an employee to contribute her own funds for two years) was impermissible opinion concerning the ultimate issue of Cheromcka's guilt. An expert may testify as to matters not within the jury's common knowledge or common experience if such testimony will "assist the trier of fact in determining a fact in issue or in understanding the evidence."

*Commonwealth* v. *Miranda*, 441 Mass. 783, 792-793 (2004). While an expert witness may not directly express her views on a defendant's guilt, her testimony may "touch[] on the ultimate issue of the case" as long as it is within her field of expertise. *Commonwealth* v. *Tanner*, 45 Mass. App. Ct. 576, 579 (1998). The common business practices of a school district, such as the amount usually contained in a petty cash fund and contributions made thereto by educational administrators, are not matters within the common experiences of jurors. Grounded in previously admitted evidence as to the facts of the case at hand, the complained of opinions were permissible explanations on topics within Roberts's area of expertise. See *ibid.*

Cheromcka also attacks as unfairly prejudicial Roberts's analysis of Cheromcka's deposits to her personal bank account, claiming that Roberts's determinations as to whether deposits were from "known" or "unknown" sources constituted impermissible opinions. The jury had before them evidence that receipts documenting expenditures from the petty cash fund totaled approximately $69,000; they also had testimony of cash deposits into Cheromcka's personal account totaling roughly $55,000. Roberts testified as to how she had accounted for all the known deposits and resolved all doubtful cases in Cheromcka's favor. The analysis of bank deposits is normally outside the common experience of jurors; Roberts's testimony served to explain the origin of the amount in Cheromcka's account. See *id.* at 581. The jury were free to make what they would of the purported correlation between the amount missing from the petty cash fund and the money not otherwise accounted for in Cheromcka's bank account. Records of the petty cash fund account and Cheromcka's bank account were in evidence for the jury to examine; the jury could give Roberts's opinions whatever weight they deemed appropriate.

As to Cheromcka's contention that the judge failed to give proper jury instructions on how to evaluate expert testimony, where Cheromcka did not request such an instruction, its absence did not create a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Rivera, supra* at 645. The purpose of instructions on expert testimony is to remind the jury that they are the sole judges of credibility; a standard instruction to

that effect as to all witnesses, as was given here, is sufficient. See *ibid.* See also *Commonwealth* v. *Richardson, supra* at 185.[21]

*Judgments affirmed.*

---

[21]The judge also instructed the jury, toward the end of Roberts's testimony, that they were to disregard any of her testimony that they might construe as an opinion as to Cheromcka's guilt or innocence.