NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

15-P-925                                        Appeals Court

COMMONWEALTH vs. DAMIEN LONG.

No. 15-P-925.

Plymouth.      September 14, 2016. - November 23, 2016.

Present: Green, Wolohojian, & Massing, JJ.

Larceny. False Pretenses. Intent. Evidence, Intent. Practice, Criminal, Required finding.

Complaint received and sworn to in the Plymouth Division of the District Court Department on December 16, 2011.

The case was tried before James M. Sullivan, J.

Amy Muscato-Wolter for the defendant.
Jessica Heaton, Assistant District Attorney, for the Commonwealth.

MASSING, J. The defendant, Damien Long, prepared an estimate to do some home improvement work for a married couple, who owned a house in Marshfield. He cashed their deposit check, bought some supplies, performed a few days of minimal work that was not to the homeowners' satisfaction, and then abandoned the job. A week later he slipped a final invoice under the door,

purporting to show that the homeowners owed <u>him</u> money.  On those facts, he was charged and convicted in District Court, after a jury trial, of larceny over $250 by false pretenses.[1]  To sustain the conviction, the Commonwealth was required to prove that at the time the defendant promised the homeowners he would do the work, inducing them to write him a check, he did so with the intention of never performing the job.  Because we conclude that the evidence did not establish that essential element of the crime beyond a reasonable doubt, we reverse.

   <u>Background</u>.  We begin by summarizing the facts presented in the Commonwealth's case-in-chief in the light most favorable to the Commonwealth.  See <u>Commonwealth</u> v. <u>Latimore</u>, 378 Mass. 671, 677 (1979).  Joseph and Maryann Watts,[2] the homeowners, wanted new windows, new window sills, a new sliding door, and some other minor improvements done on their house in Marshfield. Joseph made some calls and eventually contacted the defendant. On September 23, 2011, the defendant met the Wattses at their house to discuss the work they wanted done.  They agreed on a

---

[1] The complaint charged the defendant with larceny over $250 by false pretenses in violation of G. L. c. 266, § 34 and § 30(1).

[2] The Wattses have two sons in their twenties and their grandson lives with them.  Joseph had taken early disability retirement after thirty years as a police officer.  Nothing in the evidence indicates that the Wattses were unsophisticated, elderly, or otherwise vulnerable victims.

price of about $32,000 for the entire project, and Joseph gave the defendant a check for $11,800, dated either September 25 or 26, 2011, as a down payment. The deposit was for "purchasing the windows and getting those in," as well as the "trim and all that stuff [the defendant] need[ed] to finish it." The defendant cashed the check on September 26, 2011.

The defendant had requested an estimate for seventeen windows at the Home Depot store in Rockland on September 24, 2011. Home Depot quoted him a price of $4,409.63, but he never purchased the windows associated with that quote. He did purchase various other items including "steps, caulking, trays, casings, brushes, drop cloths, [a] claw hammer, . . . a re-framing nail gun; . . . adapters, portable work lights; . . . various nails; . . . a steel door; [and] sponges."

On September 26, 2011, the defendant and an assistant installed some crown moldings in the house and put some plywood under a countertop. Joseph was not satisfied with how the molding was installed, and Maryann left notes for the defendant when he returned to the house the next day, communicating her approval or disapproval of his work. The defendant did no more work on the house after September 27, 2011, and Joseph was unable to reach him by telephone.

The defendant never repaid the Wattses. However, on October 4, 2011, they received from the defendant a final

invoice, labelled "Bid Memo," itemizing his charges, and some receipts. Accounting for his and his assistant's hourly wage for three days of work, the purchase of windows and supplies, the rental of a dumpster, and a ten percent cancellation fee, the defendant's bill totaled $13,694.01. Subtracting the refunded dumpster rental fee and the original deposit, the defendant claimed that the Wattses owed him $1,059.01. Joseph was able to return the steel door and some moldings with the receipts the defendant left him.

At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty.[3] The judge denied the motion.

The defendant, who testified in his own defense, recounted that Joseph had hired him for numerous projects, including replacing the interior trim and exterior trim, "[t]he island, screen door, a few interior doors and a few other projects as well." Joseph gave him a deposit for "[a]ll the various materials [he] needed" for those projects. The defendant went to stores and took pictures of various materials, which he sent

---

[3] The prosecutor argued that "the Defendant contracted with the [Wattses] to get windows, amongst other things. But windows were never had." Referring to the final invoice, the prosecutor continued, "It's clear that he wasn't going to get the windows. He didn't get the windows. And in fact, he tried billing more afterwards with the intent to dupe them because he never intended to go in and do the work."

via text message to Maryann for her approval.  On his first day of work the defendant put up pieces of molding in certain rooms as Maryann directed and removed planks and supports from the deck.

When he arrived for the second day of work, Maryann had left him notes with various instructions.  The defendant made a trip to Home Depot for more supplies, including windows, some of which had to be special ordered from the Home Depot store in Quincy,[4] and removed and reframed a fan vent in the house.  On day three, the defendant installed a storm door in the front of the house, removed old moldings, stripped the island and installed plywood and moldings around it, and adjusted some kitchen cabinets.  Maryann appeared happy with the defendant's work.  However, the next day, after a carpenter friend had criticized the defendant's work, the Wattses asked him to leave all the materials on site, refund any unspent deposit money, provide receipts for everything he purchased, and itemize the hours he spent on the project.  The defendant made a few attempts to drop off the windows he had ordered, but because the

---

[4] The defendant introduced in evidence receipts dated September 26, 2011, from the Home Depot stores in Rockland and Quincy, as well as receipts dated September 26 and 27, 2011, from the Lowe's store in Pembroke.  He did not produce receipts for the windows, but testified he had given them to Joseph.

Wattses were not at home, he returned them. He did not reimburse the Wattses for the returned windows.

The Commonwealth called Maryann as a rebuttal witness. Her testimony was similar to that of her husband in terms of the initial contact with the defendant. She stated that the deposit was mainly for the windows and trim around the windows, although they had "discussions about other little things" like trim work inside the house. Maryann acknowledged having received pictures of moldings for her approval via text message from the defendant on more than one occasion.

Over the three days the defendant was on the job, he put up some moldings in one room, put plywood under a center island in the kitchen, and did some work on the kitchen cabinets. He did not move the fan vent or do any work outside the house. The slow pace of the work concerned her. On the third day, the defendant asked Maryann for an additional $13,000, which she refused. She never heard from him again, but his assistant slid a manila envelope under her front door on October 4, 2011. The defendant had left a metal door and some wood at the house.

Discussion. We review the denial of a motion for a required finding of not guilty to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

Latimore, 378 Mass. at 677, quoting from Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "To make this determination, we look only to the evidence presented by the Commonwealth, and disregard any contrary evidence presented by the defendant." Commonwealth v. Platt, 440 Mass. 396, 400-401 (2003).  "[I]t is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt."  Latimore, 378 Mass. at 677-678.  "[I]nferences drawn [from the evidence need not be] necessary inferences.  It is enough that from the evidence presented a jury could, within reason and without speculation, draw them."  Commonwealth v. Gonzalez, 47 Mass. App. Ct. 255, 257 (1999).  Nevertheless, "if, upon all the evidence, the question of the guilt of the defendant is left to conjecture or surmise . . . a verdict of guilty cannot stand." Commonwealth v. Louis Constr. Co., 343 Mass. 600, 606 (1962), quoting from Commonwealth v. O'Brien, 305 Mass. 393, 401 (1940).

General Laws c. 266, § 34, as appearing in St. 2010, c. 258, § 10, provides, "Whoever, with intent to defraud and by a false pretense, induces another to part with property of any

kind . . . shall be guilty of larceny."[5] "Prosecution for larceny by false pretenses requires proof that (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." Commonwealth v. Cheromcka, 66 Mass. App. Ct. 771, 776 (2006), quoting from Commonwealth v. Williams, 63 Mass. App. Ct. 615, 620 (2005).[6]

At issue in this case is the sufficiency of the evidence of the defendant's intent to defraud the Wattses, specifically element two, that the defendant's representations to the Wattses were false when he made them. With respect to that element, timing is critical. "A defendant . . . cannot be convicted of larceny by false pretenses absent proof of an intention to deprive at the time of the representation." Cheromcka, supra at

---

[5] The general larceny statute, G. L. c. 266, § 30(1), as amended by St. 1945, c. 282, § 2, similarly provides, "Whoever . . . with intent to defraud obtains by a false pretence . . . the property of another . . . shall be guilty of larceny."

[6] The judge's charge to the jury included those elements, with the additional element that the value of the property must exceed $250. We review the evidence in light of the theory of the crime on which the jurors were instructed. See Commonwealth v. Mills, 436 Mass. 387, 398-399 (2002). We express no opinion whether the facts of this case would support an alternate theory of larceny.

782. "While deception as to a person's present intention to perform a promise may be the basis of a conviction of larceny by false pretenses, such deception cannot be inferred from the mere nonperformance of the promise." Commonwealth v. True, 16 Mass. App. Ct. 709, 711 (1983) (citations omitted). See Cheromcka, supra at 782 ("A mere failure to fulfil a promise does not constitute a misrepresentation"). Therefore, "we must look to see what evidence, other than the defendant's failure to perform, was elicited to show that he anticipated that he would not perform his promise" (emphasis supplied). True, supra at 712. "We recognize that . . . intent often cannot be proved by direct evidence, but instead must be proved by inferences drawn from evidence of relevant circumstances." Commonwealth v. Oliver, 60 Mass. App. Ct. 770, 776 (2004), quoting from Commonwealth v. Jerome, 56 Mass. App. Ct. 726, 732 (2002).

The evidence does not show that the defendant intended not to perform any work at the time he entered into the agreement with the Wattses. Implicitly conceding this point, the Commonwealth narrowed the focus of its proof to the defendant's failure to purchase or install windows. That is, the Commonwealth contended that when the defendant entered into the agreement with the Wattses, although he may have intended to do some work for them, he never intended do the window work. In that regard, the evidence showed that the defendant gave an

estimate for work that would total about $32,000.  He obtained a quote from the Rockland Home Depot store to purchase seventeen windows for $4,409.63.  He then accepted the Wattses' $11,800 check for "purchasing the windows and getting those in." However, he never delivered the windows, never did any work towards installing them, and never repaid the Wattses the quoted purchase price.

While that evidence does show that the Wattses paid for windows they never received, in our view it falls short of establishing that, from the beginning, the defendant never intended to purchase and install the windows.  "Where, as here, a specific intent is an element of the crime charged, that intent must be proved."  Commonwealth v. Carter, 306 Mass. 141, 149 (1940).  In many cases, the defendant's intent can be inferred from his acts.  But here, the defendant's acts merely show nonperformance of a contract, which is not a crime.  Where "the acts performed by [the defendant], in and of themselves, are as susceptible of the conclusion that they were performed for a lawful purpose as for an unlawful one, the record must be searched, if a finding of guilt is to be upheld, for some evidence of the defendant's intent to commit the crime charged." Id. at 149-150.  See Louis Constr. Co., 343 Mass. at 606; Commonwealth v. McCauliff, 461 Mass. 635, 642 (2012).  We conclude that "the sparse evidence introduced at trial . . . was

too meager to justify the inference that the defendant harbored the requisite intent at the relevant time." Commonwealth v. Oliver, 443 Mass. 1005, 1005 (2005).

Conclusion. Not every private fraud warrants criminal prosecution. See Commonwealth v. Drew, 36 Pick. 179, 185 (1837). Absent proof of a present intent to defraud when the defendant first agreed to perform home improvement work for the Wattses, his conviction for larceny by false pretenses cannot stand. "We think this case . . . is one where the buyer[s'] remedy is civil not criminal." True, 16 Mass. App. Ct. at 713.[7]

Judgment reversed.

Verdict set aside.

Judgment for defendant.

---

[7] Because we conclude that the defendant was entitled to a required finding of not guilty, we do not reach the other issues he raises on appeal.