NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-196

COMMONWEALTH

vs.

MICHAEL D. THOMPSON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted of larceny over $1,200 by false pretenses in a jury-waived trial in the District Court.  At the close of the Commonwealth's case and again at the close of all the evidence, the defendant moved for a required finding of not guilty.  The judge denied both motions, and ultimately found the defendant guilty.  After being sentenced to a six-month commitment in the house of correction, the defendant filed a renewed motion for a required finding of not guilty, which was denied.  On appeal, the defendant argues that the judge erred in denying his motions for a required finding of not guilty because the Commonwealth failed to present sufficient evidence to sustain his conviction.  We affirm.

Background.  We summarize the background of this case in the light most favorable to the Commonwealth.  See Commonwealth

v. Latimore, 378 Mass. 671, 676-678 (1979).  Ken Dedominici owns Speedway Amusements LLC, located in East Bridgewater.  The defendant owned ASK Construction Company (ASK).  In early June 2019, Dedominici met the defendant at his East Bridgewater property to discuss erecting a building on the site.  The defendant gave Dedominici a proposal for the project that included a "building deposit" of $21,355 and a "building payoff" of $72,611.75.  As part of these deposits, Dedominici gave the defendant a check in the amount of $16,000 (check one) on or around August 15, 2019, with the defendant's company ASK as the recipient, and later a second check on or around September 10, 2019, also made out to ASK, in the amount of $5,355 (check two).  Dedominici and the defendant agreed that the defendant would send the money from these checks to Chief Buildings (Chief), a company specialized in the creation of steel buildings.  Based on his conversations with the defendant before he wrote checks one and two, Dedominici understood that his upfront payment was necessary so that Chief could create engineer-stamped drawings of the building and begin construction of the building offsite.[1] The engineer-stamped drawings provided by Chief were necessary

---

[1] Dedominici's testimony was inconsistent regarding whether checks one and two were purely for the purpose of receiving drawings of the building or if they were also intended for Chief to begin construction of the building.  Because we essentially conclude that it was the defendant's later actions that were criminal, we need not resolve this inconsistency.

2

in order to obtain building permits. It was agreed that once Chief delivered the constructed building, the defendant would then erect the building on site. The defendant provided Dedominici with the stamped drawings prepared by Chief and the project appeared to be progressing as expected.

On November 6, 2019, the defendant gave Dedominici an invoice for $72,611.75. The defendant told Dedominici that "the building was ready and it was going to be delivered in two weeks, so [Dedominici] needed to make a final payment so [the defendant] could pay for the building." The defendant said he "was a little bit short on the money [and] that it was required, because Chief required [the defendant] to pay 100 percent of the building up front to get it delivered." Dedominici paid the balance owed in the amount of $72,611.75 by check made out to ASK (check three). The defendant put Dedominici's money into ASK's general account and used it "for everything from fuel to truck rentals, equipment rentals, workers' comp insurance, payroll." Despite Dedominici making the payments to the defendant, the building was never delivered.

Chief's normal procedure was that a contractor would meet in person or speak over the phone with a Chief employee to discuss any drawings or plans they might have for a customer. The Chief employee would then enter relevant information into a computer program that would generate a design and a price. This

3

information was then typically used to build the building once it was paid for by the contractor. If the contractor was a certified builder authorized to use Chief's computer program themselves to generate pricing, Chief would not require advanced payment but typically would accept cash on delivery. Once the building was built, a Chief employee would contact the contractor and tell them that the building was ready to be delivered by Chief.

Around the same time the defendant entered into a contract with Dedominici, the defendant also became a certified Chief builder and completed a different project as a certified builder. Inferentially, then, he knew that obtaining the status of a certified Chief builder allowed the defendant to enter building information into the Chief computer program himself and allowed him to wait until delivery to pay Chief. Accordingly, at the time the defendant presented Dedominici with an invoice for $72,611.75, accompanied by a statement that payment of that amount was required for Chief to deliver the building, the defendant was aware that such payment was not in fact required. The defendant entered the measurements of the building into the Chief computer program, received a price, and alerted Wayne Hickey, a regional sales manager at Chief, that billing would "be in order." Chief prepared a standard written agreement for the defendant to order a building. The defendant signed the

4

form and sent an email message back, and Chief began constructing the building.

A couple of weeks before November 27, 2019, what Chief understood to be the anticipated delivery date, and within days of receiving check three under the premise that it was required for delivery, the defendant contacted Hickey and stated that the delivery would have to be postponed. After this conversation, Hickey was unable to get in touch with the defendant regarding this project and was in possession of the constructed building. By November 19, 2019, Hickey had only received $3,600 from the defendant in relation to the construction of this building.

The building never arrived and was accordingly never erected. At some point after he told Hickey to stop delivery of the building and stopped communicating with Hickey, in an effort to justify the delays, the defendant told Dedominici that his daughter had died. The defendant's daughter had not, in fact, died. Although Chief was prepared to deliver the building on or around November 27, 2019, the defendant continued to evade Hickey and tell Dedominici that the project was delayed. Dedominici and the defendant continued to stay in communication until December 2019, at which point the defendant told Dedominici that, due to an error attributable to Chief, the building was not completely ready. In late December of 2019, Dedominici contacted Chief directly and was referred to Hickey.

5

At this point, it became clear to Dedominici that the building was ready to be delivered, that the defendant had not paid Chief, and that now, without payment in full, Chief would not deliver it. Shortly after Dedominici contacted the police, he lost contact with the defendant. Hickey later found the defendant working on a different project, but the defendant did not talk to Hickey about Dedominici's project.

Discussion. "[P]rosecution for larceny by false pretenses requires proof that (1) a false statement of fact was made; (2) the defendant knew or believed that the statement was false when he made it; (3) the defendant intended that the person to whom he made the false statement would rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property." Commonwealth v. Cheromcka, 66 Mass. App. Ct. 771, 776 (2006), quoting Commonwealth v. Williams, 63 Mass. App. Ct. 615, 620 (2005). The defendant argues that the judge erred in denying his motions for a required finding of not guilty because the Commonwealth failed to provide any evidence of the second element: the defendant knew or believed that the statement was false when he made it. "We review the denial of a motion for a required finding of not guilty to determine 'whether the evidence offered by the Commonwealth, together with reasonable inferences therefrom, when viewed in its light most favorable to the Commonwealth, was

6

sufficient to persuade a rational jury beyond a reasonable doubt of the existence of every element of the crime charged.'" Commonwealth v. Barry, 481 Mass. 388, 397-398 (2019), quoting Commonwealth v. Whitaker, 460 Mass. 409, 416 (2011). "Because the defendant moved for [a] required finding[] at the close of the Commonwealth's case and again at the close of all the evidence, '[w]e consider the state of the evidence at the close of the Commonwealth's case to determine whether the defendant's motion should have been granted at that time. We also consider the state of the evidence at the close of all the evidence, to determine whether the Commonwealth's position as to proof deteriorated after it closed its case.'" Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006), quoting Commonwealth v. Sheline, 391 Mass. 279, 283 (1984).

"A defendant . . . cannot be convicted of larceny by false pretenses absent proof of an intention to deprive at the time of the representation." Commonwealth v. Long, 90 Mass. App. Ct. 696, 700 (2016), quoting Cheromcka, 66 Mass. App. Ct. at 782. Because the defendant's state of mind often cannot be proven with direct evidence, the Commonwealth may attempt to meet its burden with "inferences drawn from evidence of relevant circumstances." Long, supra, quoting Commonwealth v. Oliver, 60 Mass. App. Ct. 770, 776 (2004).

We need not decide whether the Commonwealth met its burden by presenting evidence of the defendant's intent while making statements prior to receiving the first two checks. The evidence regarding the defendant's intent while making a false statement in an effort to secure check three, when viewed in conjunction with all of the other evidence, is sufficient to satisfy the Commonwealth's burden. The evidence was that Dedominici paid the November 6, 2019, invoice of $72,611.75, because the defendant told Dedominici that the building was ready and was going to be delivered once the defendant paid for it, but he (the defendant) did not have enough money, so Dedominici needed to make a final payment for the building to be delivered. Given that this was a false statement because the defendant did not need to pay for the building for it to be delivered, we examine the evidence in connection to this statement to determine if it was sufficient to establish that the defendant possessed the requisite knowledge and intent when he made it. We hold that it was.

The testimony was that Hickey met with the defendant shortly after the defendant told Dedominici that he was short on cash, received check three, and deposited it in ASK's general account. At that meeting the defendant, knowing from recent experience that Chief accepted cash on delivery from certified builders, stated that the delivery would have to be postponed.

8

Then he used Dedominici's money to pay ASK's operating expenses and lied to Dedomonici about the delivery delays by attributing them to errors by Chief and the death of a child.  Given the close proximity of the meeting with Hickey and these other events to the defendant's false statement, and viewing this evidence in the light most favorable to the prosecution, we believe the evidence was sufficient to establish beyond a reasonable doubt that the defendant knew when he asked for check three that the money was not required for the building to be delivered and that, in fact, he was going to direct that it not be delivered because ASK needed the cash to operate.  While the defendant argues that the evidence simply indicates only that he was not good at conducting business, we examine evidence in this context in the light most favorable to the Commonwealth.  See Latimore, 378 Mass. at 676-678.  The judge, since this was a bench trial, was presented with this defense and was free to either accept it or disregard it.

We also take a moment to examine the evidence as it relates to the fourth element of larceny by false pretenses:  the person to whom the false statement was made did rely on it and, consequently, parted with property.  See Long, 90 Mass. App. Ct. at 700.  Although it could be argued that Dedominici had a preexisting contractual obligation to pay the defendant, the payment of the third check at that time was not necessary

9

because the defendant was a Chief builder. The final payment could thus be made at the time when the building was actually delivered. Instead, the defendant told Dedominici that the invoice balance needed to be paid before the building could be delivered. A review of the trial transcript reveals that the parties viewed Dedominici's payment obligations under the contract differently, however when viewing the evidence in the light most favorable to the Commonwealth, we believe it supported a reasonable inference that he was not required to pay the deposit when the defendant gave him the final invoice.

While we have considered the parties' arguments regarding whether the defendant possessed the requisite intent at the inception of the contract between the defendant and Dedominici, we take this opportunity to note that we do not examine this case in a contract law framework and need not decide when the contract was formed and what work, if any, was performed after the contract's inception. The criminal statement at issue need not be a statement intended to form a contract. In this context, we need only decide whether the evidence presented was sufficient to establish beyond a reasonable doubt that the defendant made a false statement of fact that he knew or believed was false when he made it and did so with the intent that the person to whom he made the false statement would rely on it and that the person to whom the false statement was made

10

did rely on it when parting with the property at issue.  See

<u>Cheromcka</u>, 66 Mass. App. Ct. at 776.

In summary, the Commonwealth presented sufficient evidence that did not deteriorate after the defendant testified and from which a reasonable finder of fact could conclude the following: (1) the defendant's statement that check three was required for the building to be delivered was false; (2) the defendant knew the statement was false when he made it; (3) the defendant made the statement intending to cause Dedominici to part with his money; (4) Dedominici relied on the statement; and (5) the statement caused Dedominici to part with his money in a way he may not have had the false statement not been made.  We therefore need not examine the closer issue whether the Commonwealth's evidence of statements and actions prior to the payment of check one and check two are similar or dissimilar to the type of evidence presented in <u>Long</u>, 90 Mass. App. Ct. at 700 (evidence only sufficient to show nonperformance of contract and

11

insufficient to show that defendant possessed requisite intent to defraud when making assurances to victim).  Accordingly, we affirm.

Judgment affirmed.

By the Court (Green, C.J.,
  Walsh & Smyth, JJ.[2]),

Assistant Clerk

Entered:  March 20, 2024.

---

[2] The panelists are listed in order of seniority.