COMMONWEALTH *vs.* GARY GEANE.

No. 99-P-1263.

Hampden. October 12, 2000. - March 13, 2001.

Present: BROWN, SMITH, & LENK, JJ.

*Larceny. Practice, Criminal,* Indictment. *Uttering Forged Instrument. Words,* "Property."

At the trial of indictments for larceny, alleging that the defendant, a contractor, had committed a theft of money from subcontractors on a construction project, where the evidence demonstrated a fraudulent inducement of services but no tangible res, the defendant was entitled to judgments of not guilty. [151-156]

That a criminal defendant was assertedly seeking to collect a lawful debt did not afford a defense to a charge of uttering forged lien releases; there was no error in the judge's failing to so charge the jury on his own motion. [156-157]

INDICTMENTS found and returned in the Superior Court Department on January 20, 1998.

The cases were tried before *Bertha D. Josephson,* J.

*Richard J. Fallon* for the defendant.

*Thomas H. Townsend,* Assistant District Attorney, for the Commonwealth.

BROWN, J. The defendant was convicted of uttering, G. L. c. 267, § 5, attempted larceny, G. L. c. 274, § 6, larceny, G. L. c. 266, § 30,[1] and larceny of property with a value greater than $250, G. L. c. 266, § 30 (nine counts). On appeal, the defendant claims that (1) the indictment for attempted larceny was defective, (2) the indictments for the larceny counts likewise were defective, and (3) the trial judge erred in her jury instructions with respect to both the uttering and attempted larceny counts. We address each claim in turn.

---

[1]At trial, an indictment for larceny of property with a value greater than $250 was amended to charge simple larceny.

*Introduction.* This case compels us to revisit a nettlesome issue considered in *Commonwealth* v. *Moreton,* 48 Mass. App. Ct. 215 (1999): namely, in what circumstances a merchant may be convicted of larceny for failing to satisfy a commercial debt. The complexity of the particular problem here flows largely from the Commonwealth's erroneous charging decisions. The government's flawed approach, particularly with respect to the indictment charging attempted larceny, requires reversal of many of the defendant's convictions.

First the facts, which we rehearse in such detail as is minimally sufficient to provide a backdrop for our analysis. The defendant, a general contractor, agreed to construct a sports facility for an entity called Soccer City at a total cost of approximately $330,000. The money was to be paid in installments of $54,000 (upon signing the contract), $39,647 (at the commencement of work), $39,647 (upon completion of the foundation), $117,000 (upon delivery of a prefabricated structure), $39,647 (upon commencement of the building frame), and $39,647 (upon commencement of siding).

Passing over many extraneous details, after paying the defendant approximately $241,000 (the initial $54,000, the first payment of $39,647, $117,000 when the building materials arrived, and an advance of $30,000), Soccer City ordered the defendant to produce lien releases evidencing that all the subcontractors had been paid. All future payments by Soccer City were made contingent upon receipt of the releases.

Apparently unable or unwilling to satisfy approximately $60,000 in unpaid subcontractor invoices, the defendant forged lien releases and submitted them to Soccer City. To put it mildly, the attempted deception was inartful, and it was immediately sniffed out by representatives of Soccer City. The defendant left the job, and Soccer City expended another $140,000 attempting to complete the project. At the time of trial, the structure remained unfinished.

Other pertinent details are included in our analysis as necessary.

*Analysis.* The uttering indictments relate to the forged lien releases. The attempted larceny indictment is based upon the defendant's effort to secure, by false pretenses, money from

Soccer City. The ten larceny counts allege that the defendant converted property of the various unpaid subcontractors (a separate count for each subcontractor).

1. *Attempted larceny.* As the defendant argues, and the Commonwealth concedes, the indictment for attempted larceny is defective. Specifically, it fails to set out an overt act, and so does not describe a crime. See *Commonwealth* v. *Anolik*, 27 Mass. App. Ct. 701, 710-711 (1989). That indictment must be dismissed.[2] We express no opinion as to whether the Commonwealth may reindict for the crime of attempted larceny.

2. *Larceny.* As to the ten larceny indictments (nine counts of larceny of property with a value greater than $250 and one count of simple larceny), the defendant argues in his brief that they also should be dismissed because each alleges "theft of money" from the subcontractors, whereas the evidence at trial proved only theft of goods or services. Since this issue is raised for the first time on appeal,[3] our review of the defendant's claim is limited to assessing whether any error has resulted in a substantial risk of a miscarriage of justice.[4] See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

Even assuming arguendo that there was proof here only of theft of goods or services — not money — the defendant is not entitled to relief on this theory. The purpose of an indictment is to apprise a criminal defendant of the nature of the charges against him, and to permit him to prepare a defense. See *Commonwealth* v. *Hayes*, 311 Mass. 21, 24-25 (1942). The defendant makes no argument in his brief — nor reasonably could he — that he was actually surprised at trial by the government's allegations. Similarly, he makes no claim that he would have

---

[2]Given our holding, we need not reach the defendant's claim concerning faulty jury instructions on this indictment.

[3]The defendant represented himself at trial, with the "advice" of an attorney who attended all the proceedings. We hold pro se litigants to the same standards as practicing members of the bar. *Commonwealth* v. *Jackson*, 419 Mass. 716, 719 & n.3 (1995).

[4]The fact that this issue was not raised at trial distinguishes the situation here from that in *Commonwealth* v. *Baker*, 368 Mass. 58, 67, 71 (1975), upon which the defendant heavily relies. In *Baker*, the alleged defect in the indictments was the subject of multiple objections at trial. Further, in *Baker* the defendant had requested a bill of particulars, and the trial evidence was at variance with the indictments.

altered his defense in any way had the indictments specified "goods or services" instead of (or in addition to) "money" as the object of any conversion. See *Commonwealth* v. *Amirault*, 404 Mass. 221, 233-234 (1989). Finally, we note that the defendant never requested a bill of particulars, nor was there anything else before or at trial that evinced any confusion on his part about the nature of the Commonwealth's charges. See *Commonwealth* v. *Vinnie*, 428 Mass. 161, 167, cert. denied, 525 U.S. 1007 (1998). Contrast *Commonwealth* v. *Baker*, 368 Mass. 58, 64-65 (1975).

In these circumstances, this case is controlled by G. L. c. 277, § 35, which has been deemed to provide that "a divergence between an indictment and the Commonwealth's proof will not be a basis for acquittal where the indictment . . . correctly specif[ies] the essential elements of the crime, and the alleged variance does not prejudice the defendant in his defense." *Commonwealth* v. *Costello*, 392 Mass. 393, 404 (1984). This rule has especial force where the variance involves surplusage in the charging instrument — i.e., unnecessary specifics about the crime alleged beyond the bare elements (here, the express reference to "money" rather than the generic "property").[5] *Id.* at 403-404. No substantial risk of a miscarriage of justice is posed by the form of the larceny indictments.

Nonetheless, there is a serious problem with the larceny counts. We agree with the defendant that, as to the subcontractors, there is no evidence that he stole any money. Without citation to *relevant* authority, the Commonwealth argues in its brief that the defendant received money for the subcontractors from Soccer City as a trustee or agent. On this basis, the government contends that these funds belonged to the subcontractors as soon as the money was paid over to the defendant, and that a

---

[5]The defendant, in his reply brief, argues that the Commonwealth's failure to prove that money, as charged in the indictments, was the object of the defendant's larcenies renders the Commonwealth's proof legally insufficient, necessarily creating a substantial risk of a miscarriage of justice. This reflects a misperception of the law. The nature of the res converted is not an element of G. L. c. 266, § 30. Use of a specific term ("money," as opposed to the more generic term "property") in the indictment does not alter the elements constituting the offense. The Commonwealth here offered legally sufficient evidence on each element of the crime of larceny.

conversion occurred when the defendant failed to tender the funds to the various subcontractors on the basis of their invoices. We do not accept this characterization.

This case is unlike *Commonwealth* v. *Moreton*, 48 Mass. App. Ct. 215 (1999), where a fisherman entrusted a blue fin tuna to the defendant for sale at auction, and the defendant failed to pay the fisherman the proceeds, subsequently declaring bankruptcy. The dissent characterized the arrangement as a consignment sale,[6] and concluded on that basis that the defendant held the fisherman's funds on a bailment, and converted them to his own use when he failed to pay. *Id.* at 221-222 (Brown, J., dissenting).

Here, there was no special fiduciary relationship between the defendant and the subcontractors. Absent such a special relationship, a contractor does not hold funds for subcontractors subject to any form of bailment, pledge, or trust.[7] See *id.* at 222 (Brown, J., dissenting) (bailment analysis "limited strictly to the realm of consignment sales and cognate arrangements"). Absent a contract provision making the contractor the trustee of any funds received for a subcontractor, if a contractor fails to pay a subcontractor, any efforts on the latter's part to obtain payment must be pursued through civil, not criminal, proceedings.[8] Compare *id.* at 219-220.

That is not to say, however, that where a contractor induces a subcontractor to provide goods (but not services, a point we shall take up presently) through false pretenses — including a

---

[6]The majority did not agree that the arrangement was necessarily a consignment, 48 Mass. App. Ct. at 218-219, and reversed the judgment, finding no evidence of criminal intent. *Id.* at 217-218.

[7]In support of its arguments, the Commonwealth cites *Commonwealth* v. *Brown*, 4 Mass. 580 (1808), and *Commonwealth* v. *James*, 1 Pick. 375 (1823). Even assuming these venerable decisions survived the complete overhaul of the law of commercial relationships wrought by the enactment of the Uniform Commercial Code, they are nonetheless inapplicable here. In both *Brown* and *James*, title to the property converted at all times was vested in someone other than the defendant. As we conclude here, title to the funds paid by Soccer City to the defendant — assuming title may be held to a fungible res such as money — never vested in any of the subcontractors.

[8]In practice, it is often a contractor's function to withhold payment from subcontractors until work is completed satisfactorily. It is also usually the case that a general contractor retains some portion of the fee paid to him for his administrative overhead, profit, etc.

calculated false promise to provide later payment — that the contractor cannot be held liable for larceny of those goods. In this case, for example, if the jury concluded that the defendant had contrived a plan to induce subcontractors to deliver goods, for which the defendant had no intention of paying, and which he converted permanently to his own use (for example, by using them in an ongoing fraudulent scheme to extract progress payments from Soccer City), then the defendant committed larceny.[9]

The rub here is that, with respect to most of the subcontractors, services, not goods, were purveyed. In Massachusetts, consistent with ancient common law principles, the fraudulent inducement of services is not larceny. See *Commonwealth v. Rivers*, 31 Mass. App. Ct. 669, 671 & n.3 (1991) ("theft of services . . . [is] not . . . considered a criminal offense in the absence of special legislation"). Rather, in order to be convicted for larceny, some tangible res must be converted. This is reflected in G. L. c. 266, § 30, the general larceny statute, which criminalizes the conversion of "the property of another." "Property" is defined in § 30, as amended by St. 1995, c. 272, § 3, as:

> "money, personal chattels, a bank note, bond, promissory note, bill of exchange or other bill, order or certificate, a book of accounts . . . a deed . . . any valuable contract in

---

[9]The convictions on the counts of larceny against the subcontractors were clearly grounded in a larceny by false pretenses theory. The jury were instructed in pertinent part:

"[T]he Commonwealth must prove beyond a reasonable doubt the following: First, that [the defendant] made a false statement of fact. Second, that he knew the statement was false. And third, that he made that false statement of fact with the intent that the . . . alleged victim of the larceny, relied upon it as true . . . and as a result of that reliance, parted with property that was its property . . . . Finally, that the property was valued at over $250.

"  . . .

"Now, the law is careful to distinguish between the simple nonpayment of something that's acquired and false pretenses in acquiring something. So, while deception as to a person's present intention to perform a promise may be the basis of a conviction for larceny by false pretenses, such a deception cannot be inferred merely from the nonperformance of the promise. However, use of an outright lie to obtain . . . someone else's properties . . . can satisfy this element."

force, a receipt, release or defeasance, a writ . . . a public record . . . a security deposit . . . electronically processed or stored data, either tangible or intangible, data while in transit, telecommunications services, and any domesticated animal, including dogs, or a beast or bird which is ordinarily kept in confinement."

With the *express* exception of "data while in transit," "intangible" "electronically processed or stored data," and "telecommunications services," every item listed is some form of tangible property. The various types of construction services performed by all but three of the subcontractors here simply do not fall within the purview of G. L. c. 266, § 30, or the common law definition of the offense.

In apparent misunderstanding of the limited reach of the larceny statute, the trial judge informed the jury on five separate occasions that conviction of larceny was mandated if the jury determined that, by false pretenses, the defendant had induced any victim to surrender property or "services." This was error. If there is any possibility that the jury, in fact, convicted the defendant on any particular count on a theft of services theory, reversal is required.

Viewing the ten counts individually, we conclude that the evidence on the indictments alleging larceny from TNT Tree Service, Sherman and Woods Surveying, Palmer Paving, and Architectural Insights related to services exclusively, thus requiring reversal. The evidence on the indictments alleging larceny from Springfield Steel Erectors and Taylor Rental related to equipment rental services. Since an element of larceny is an intent to deprive the rightful owner of his property *permanently*,[10] see *Commonwealth* v. *Christian*, 430 Mass. 552, 558 (2000), we conclude that obtaining rental services by fraud is not larceny,[11] and these judgments must also be reversed.

The issue is more complex with respect to the alleged larceny

---

[10]The trial judge also erred in instructing that use of deception to "obtain, even for a limited period of time, the use of someone else's . . . property" would satisfy an element of a larceny by false pretenses charge.

[11]Our conclusion in this regard is bolstered by the fact that larceny of leased or rental property is codified as a separate offense under G. L. c. 266,

from M. Santos Construction. Santos apparently performed work and supplied goods incidental to installation of a sewer system. Under Article 2 of the Uniform Commercial Code, it is unclear whether this would be characterized as a sale of goods or an agreement for the performance of services. The question would turn on whether the essence of the contract was the sale of parts for the sewer system, or whether the service component of the contract predominated. See U.C.C. §§ 2-102, 2-105(1).[12] Because the Commonwealth provided insufficient evidence to establish that the contract was for the sale of goods,[13] the judgment on this indictment must be reversed. See *Commonwealth v. McGovern*, 397 Mass. 863, 867-868 (1986) ("findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice").

Finally, the evidence on the indictments relating to Chicopee Mason Supply, Chase Pre-Cast, and the Construction Supply Outlet all related unequivocally to the sale of goods. In these circumstances, we perceive no danger that the jury might have convicted the defendant on an improper theory — i.e., theft of services as opposed to theft of goods. The convictions based on those indictments, therefore, may stand.[14]

3. *Uttering.* As for the defendant's claim that the trial judge erred in failing to charge, sua sponte, that the defendant could not be convicted of uttering if the forged lien releases were used to collect a lawful debt, there was no error. Like the

---

§ 87, as amended by St. 1982, c. 259. That provision requires proof of an intent "to place such property beyond the control of the owner."

[12]While we do not mean to imply that matters such as this, arising in the context of a criminal prosecution, necessarily must be resolved by reference to the U.C.C., it provides a ready analytical framework.

[13]The contract with M. Santos Construction is not reproduced in the record on appeal. Nor does it appear that it was introduced at trial. In his testimony, Mr. Santos gave only the most cursory description of his contract, viz., "I had to bring in equipment, I started to rip the parking lot up, and we put in a drain line."

[14]The defendant makes a fleeting argument in his brief to the effect that there was insufficient evidence that the defendant was in control of any of the funds paid by Soccer City. In the first instance, the defendant's argument in this regard does not rise to the level of appellate argument as defined in Mass. R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). We also note that overwhelming evidence was adduced at trial indicating that the defendant, in fact, controlled the funds paid by Soccer City.

defendant's other arguments, this issue has been raised for the first time on appeal. Again, therefore, our review is limited to assessing whether any error poses a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. at 563-564.

While it may be a defense to a charge of larceny by false pretenses, see *Commonwealth* v. *McDuffy*, 126 Mass. 467, 470-471 (1879), the fact that a criminal defendant was seeking to collect a lawful debt is no defense to a charge of uttering. See *Commonwealth* v. *Peakes*, 231 Mass. 449, 455-456 (1918). Admittedly, an element of uttering is an intent to defraud. See G. L. c. 267, § 5. In weighing the Commonwealth's evidence on this point, the jury certainly were entitled to take into account all of the circumstances attending the defendant's actions — including his rights under the contract with Soccer City. Quite properly, the defendant specifically urged them to do so. However, no special instruction was required.

The defendant, in his brief, asserts that there is no basis for a different rule in what he sees as the closely related contexts of a charge of larceny by false pretenses and a charge of uttering. The proscriptions against these two types of criminal conduct are, however, directed at different evils. Larceny simply punishes the conversion of the property of another. Where the property in question actually belongs to the defendant (where, for example, it is owed to him under the terms of a contract), a larceny conviction perhaps makes little sense. The uttering prohibition, while also aimed at protecting property rights, additionally seeks to preserve the general integrity of commercial documents. That value, .crucial in a mercantile society, is impaired by any act of forgery. See *Commonwealth* v. *Zaleski*, 3 Mass. App. Ct. 538, 544 (1975), citing Perkins, Criminal Law (2d ed. 1969). It is reasonable, therefore, to punish uttering even where no conversion actually takes place in result. In any event, there was no error in the judge's instructions here.

*Conclusion.* The judgment on the indictment for uttering is affirmed. The judgments on the three indictments for larceny of property with a value exceeding $250 relating to Chase Pre-Cast (No. 98-95), Construction Supply Outlet (No. 98-98), and Chicopee Mason Supply (No. 98-103) are likewise affirmed.

Commonwealth *v.* Geane.

The judgments on the seven remaining larceny counts (No. 98-94, Taylor Rental; No. 98-97, Springfield Steel Erectors; No. 98-100, Sherman and Woods Surveying; No. 98-101, M. Santos Construction; No. 98-102, TNT Tree Service; No. 98-104, Architectural Insights; and No. 98-105, Palmer Paving) are reversed, the verdicts set aside, and judgment shall enter for the defendant. As to the conviction of attempted larceny, the judgment is reversed, the verdict set aside, and the matter is remanded to the Superior Court, where the indictment shall be dismissed.

*So ordered.*