COMMONWEALTH *vs.* JEROME VAUGHN
(and four companion cases[1]).

No. 00-P-1264.

Hampden. December 4, 2001. - May 10, 2002.

Present: GELINAS, DREBEN, & MILLS, JJ.

*"Carjacking" Statute. Evidence,* Joint enterprise. *Joint Enterprise. Robbery. Practice, Criminal,* Instructions to jury.

At a criminal trial, the Commonwealth presented sufficient evidence to justify the defendant's conviction of carjacking on a theory of joint venture. [703]
This court concluded that there was sufficient evidence presented in the Commonwealth's case-in-chief at a criminal trial for the jury to reasonably conclude that three criminal codefendants acted with the same knowledge of an unarmed robbery and with the intent to assist in the commission of that crime so as to accomplish its objective. [703-704]
At a criminal trial, the judge's instructions to the jury on joint venture and unarmed robbery did not confuse the jury or create a possibility that the defendant was improperly convicted on a theory of individual liability, where the evidence supported the defendant's conviction as either a principal or a joint venturer. [704-706]

INDICTMENTS found and returned in the Superior Court Department on May 11, 1999.

The cases were tried before *Peter A. Velis,* J.

*Richard J. Fallon* for Jamal Jackson.

*Jean C. LaRocque* for Jerome Vaughn.

*Bethany C. Lowe,* Assistant District Attorney, for the Commonwealth, submitted a brief.

MILLS, J. Codefendants Jerome Vaughn and Jamal Jackson were convicted of carjacking, G. L. c. 265, § 21A,[2] and

---

[1]Two against Jamal Jackson and two against Jerome Vaughn. Vaughn does not raise any argument regarding his conviction for intimidation of a witness pursuant to G. L. c. 268, § 13B.

[2]General Laws c. 265, § 21A, provides in pertinent part: "Whoever, with intent to steal a motor vehicle, assaults, confines, maims or puts any persons

unarmed robbery (as a lesser included offense on an indictment charging armed robbery), G. L. c. 265, § 17. A third codefendant, Kelly Jacobs, indicted for carjacking, was tried with them and was acquitted.

Vaughn appeals his carjacking and unarmed robbery convictions, claiming that the evidence was insufficient to convict him as a joint venturer. Jackson appeals his conviction of unarmed robbery, claiming that there was insufficient evidence to support the verdict. He also asserts that certain jury instructions were erroneous.

1. *Factual background.* We view the facts in the light most favorable to the Commonwealth to determine whether any rational trier of fact could have found the essential elements of each crime beyond a reasonable doubt. *Commonwealth* v. *Andrews*, 427 Mass. 434, 440 (1998), and cases cited. On April 14, 1998, Tariq Ali was driving his car in Springfield when a red sedan with at least four occupants, including Jackson, Vaughn, Jacobs, and a juvenile whom we shall call Robert Smith, drove up behind Ali's car and signaled him by blinking the red sedan's lights and sounding its horn. Ali pulled over and the driver of the red sedan pulled up behind his car. On the pretense of wanting a date, Jacobs approached Ali's car. She asked him to unlock the doors, asked him for his phone number and returned to the red sedan. During this exchange, Ali unlocked the doors, but refused to give Jacobs his number, claiming that he already had a girlfriend.

After Jacobs departed, Jackson entered Ali's car through the unlocked front passenger door, put a sharp object against Ali's neck, instructed him to not move, threatened to stab him, and told Ali that his car was being taken. Jackson also unlocked a rear door, permitting Vaughn to enter the rear passenger compartment. Vaughn then grabbed Ali's neck and held him against the seat while Jackson searched Ali's pockets and the car's glove compartment from which Jackson took several compact discs.

Both Jackson and Vaughn repeatedly threatened Ali with violence, advised him that they were taking his property, and

in fear for the purpose of stealing a motor vehicle shall, whether he succeeds or fails in the perpetration of stealing the motor vehicle[,] be punished . . . ."

ordered him to move his car to a secluded place. At some point Smith came to the passenger side of Ali's car and removed a compact disc player remote control. This either occurred while Vaughn was already in Ali's car or just outside preparing to enter. After five or six minutes Ali beeped his horn and signaled a passing motorist who alerted the local police. When the police arrived, Ali emerged from his car and said, "They're trying to rob me." Additional facts will be recited as appropriate.

2. *Sufficiency of the evidence as to carjacking.* Vaughn challenges his conviction for carjacking on the theory that there was insufficient evidence of a joint venture. We affirm.

A defendant can be convicted as a joint venturer if he was "(1) present at the scene of the crime, (2) with knowledge that another intended to commit the crime . . . ; (3) that by agreement he was willing and available to help the principal if necessary; and (4) that he shared with the principal the mental state required for the crime." *Commonwealth* v. *Tague*, 434 Mass. 510, 514 (2001), cert. denied, 534 U.S. 1146 (2002). "A person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances developed at trial. . . . The inferences drawn by the [fact finder] need only be reasonable and possible and need not be necessary or inescapable." *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980) (citations omitted).

Ali consistently testified that Vaughn was holding his neck while Jackson "started to tell [Ali] to get out of the car because he was taking [Ali's] car." Ali testified that Jackson stated he was taking his car "several times" while Vaughn was in the car. Ali also testified that Vaughn himself said "we take your [stuff]," and that after Vaughn got into the car, Jackson kept telling Ali to move the car to a secluded place.

Thus, the Commonwealth presented sufficient evidence that would justify the jury in concluding that Vaughn shared Jackson's intent. "To the extent that conflicting inferences are possible from the evidence, it is for the jury to determine where the truth lies." *Commonwealth* v. *Longo*, 402 Mass. 482, 487 (1988) (citations omitted; internal quotation marks omitted).

3. *Sufficiency of the evidence as to unarmed robbery.* Both

Jackson and Vaughn challenge the sufficiency of the evidence as to their unarmed robbery convictions.

On appeal, both Jackson and Vaughn make much ado about Ali's conflicting testimony as to exactly when Smith took the remote and who was physically in the car with Ali at that precise moment. The evidence is clear that Jackson, Vaughn, and Smith were all in the car's immediate vicinity when Smith took the remote and Jackson took the compact discs. The jury could reasonably infer, even with Ali's conflicting testimony as to the precise chronology of events, that the actions of Smith and Jackson were in such close physical and temporal proximity to each other and Vaughn that they all shared the intent to rob Ali. The evidence supports a conclusion that whatever property was present was the intended object of the robbery.

We need not quibble about whether the defendants' individual and collective proximity to Ali's car satisfies presence in the vicinity. *Commonwealth* v. *Mahoney,* 405 Mass. 326, 329 (1989). See *Commonwealth* v. *Caramanica,* 49 Mass. App. Ct. 376, 381-382 (2000). The critical question is whether the defendants acted with knowledge of the robbery and with the intent to assist in the commission of that crime so as to accomplish its objective. *Commonwealth* v. *Lombard,* 419 Mass. 585, 589-591 (1995). Based solely upon the evidence presented in the Commonwealth's case-in-chief, we conclude that the Commonwealth presented sufficient evidence for the jury to reasonably conclude that Jackson, Vaughn, and Smith acted with the same knowledge and intent as to the entire criminal episode.

4. *Jury instructions on joint venture and unarmed robbery.*[3] Jackson's indictment specified the object of the robbery as a "radio remote control." Although it is uncontroverted that Jackson took compact discs from Ali's glove compartment, it is also uncontroverted that Smith was the person who reached into Ali's car and removed the remote. The compact discs were not specified in Jackson's indictment.

Jackson argues that the judge erred by not specifically instructing the jury that they could find Jackson guilty of rob-

---

[3]Although Jackson presents two separate arguments, we address them as a single claim of alleged jury confusion and risk of conviction upon insufficient evidence.

bery *only* upon a joint venture theory and complains that it is impossible to determine if the jury erroneously convicted him upon a theory of individual liability.[4] Jackson, however, made no request for a special verdict slip or for a special instruction, and made no objection to the charge when given. The record shows that he explicitly agreed with the charge and with the form of the general verdict slips. Nevertheless, Jackson now claims that the charge potentially confused the jury and that this confusion created a possibility that he was improperly convicted on a theory of individual liability.[5] Because this claim is raised for the first time on appeal, our review is limited to assessing whether any error poses a substantial risk of a miscarriage of justice. *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-64 (1967).

Jackson's argument assumes that the Commonwealth was proceeding on two theories of liability and relies on *Commonwealth* v. *Flynn*, 420 Mass. 810 (1995). Jackson's reliance upon *Flynn* is misplaced. In *Flynn*, the defendant was tried on the theory of individual culpability *and* on a theory of joint venture. The jury rendered a guilty verdict, but the court reversed and remanded because there was insufficient evidence that the defendant had caused the death individually. *Id.* at 818.

In this case, there was sufficient evidence to establish that Jackson stole the compact discs and that Smith stole the remote. That only the radio remote was specified in the indictment is not relevant. "A defendant shall not be acquitted on the ground of variance between the allegations and proof if the essential elements of the crime are correctly stated, unless he is thereby

---

[4] The judge instructed the jury in pertinent part: "Jamal Jackson and Jerome Vaughn are charged with the offense commonly known as armed robbery either as principals or as joint venturers. . . . Neither Jamal Jackson nor Jerome Vaughn may be found guilty of armed robbery unless the Commonwealth proves beyond a reasonable doubt each of the following elements [of armed robbery] with regard to either defendant as a principal or joint venturer. . . ."

[5] We note Jackson's particular reference to *Commonwealth* v. *Amirault*, 424 Mass. 618, 646-647 & n.21 (1997), where the court commented upon the "rarely used power" of upsetting a completely adjudicated conviction to avoid a substantial risk of a miscarriage of justice, where the claimed error was not preserved at trial. The court noted the power as restricted to "extraordinary cases," to be exercised only in the most unusual circumstances, and only in response to a serious and obvious error.

prejudiced . . . ." G. L. c. 277, § 35. See *Commonwealth* v. *Costello,* 392 Mass. 393 (1984). See also *Commonwealth* v. *Geane,* 51 Mass. App. Ct. 149, 151 (2001) (alleged inconsistency in indictment did not afford defendant relief on this theory). We conclude that Jackson's indictment sufficiently apprised him of the nature of the charges against him and permitted him to prepare a defense. *Commonwealth* v. *Geane,* 51 Mass. App. Ct. at 151, citing *Commonwealth* v. *Hayes,* 311 Mass. 21, 24-25 (1942). See *Commonwealth* v. *Hobbs,* 385 Mass. 863, 869-870 (1982). "The jury are not required to conclude unanimously that the defendant was either the principal or the joint venturer, so long as sufficient evidence exists to support either role." *Commonwealth* v. *Ellis,* 432 Mass. 746, 761 (2000). Here, the evidence would support a guilty verdict on a theory of individual liability (the compact disks), as well as on a theory of joint venture (the remote). The judge's instructions to the jury were proper.

*Judgments affirmed.*