NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-733                                        Appeals Court

COMMONWEALTH  vs.  ALEJANDRO ALVAREZ.

No. 14-P-733.

Suffolk.     December 1, 2015. - September 2, 2016.

Present:  Rubin, Maldonado, & Massing, JJ.


Larceny.  False Pretenses.  Boston Housing Authority.  Practice,
    Criminal, Indictment, Variance, Restitution, Sentence.
    Practice, Civil, Remark by judge.  Restitution.



    Indictments found and returned in the Superior Court
Department on January 23, 2013.

    The case was heard by Elizabeth M. Fahey, J.


    Jeremy A. Cohn for the defendant.
    Paul B. Linn, Assistant District Attorney, for the
Commonwealth.


    MALDONADO, J.,  The defendant applied and was approved for

subsidized housing through the Boston Housing Authority (BHA),

which entitled him to a rental unit at a rate below the market

value.  He was placed on a waiting list and almost five years

later, the defendant was notified of the availability of a

subsidized apartment.  By then, the defendant had already secured alternative housing for himself.  Rather than reject the unit, the defendant pretended to take possession of the apartment for himself but actually gave possession of the apartment to his niece, who, as an undocumented person, did not qualify for subsidized public housing.

The defendant faithfully paid the rent on behalf of his niece and renewed his eligibility each year -- including continuing the pretense of his residing at the premises.  Upon learning the defendant's niece rather than the defendant himself resided in the unit, the Commonwealth brought criminal charges against the defendant.  It charged the defendant with two counts of perjury and one count of larceny by false pretenses.

The defendant pleaded guilty to the two perjury counts and elected for a jury-waived bench trial on the larceny charge.  A joint stipulation of facts was entered, along with the Commonwealth's exhibits.  The judge found the defendant guilty of the larceny charge and sentenced the defendant to a five-year period of probation, a $25,000 fine, and restitution in the amount of $14,639.  He also was sentenced to concurrent terms of five years for the two perjury charges.  The defendant appeals from the larceny conviction, raising several challenges.[1]  He

---

[1] The two perjury counts do not form the basis of any issues on appeal.

asserts that 1) the property alleged to have been taken does not fall within the larceny statute; 2) there was a fatal variance between property alleged to have been taken and the proof of the property taken; 3) the restitution ordered was based on improper factors; and 4) the judge made improper remarks at sentencing which unfairly factored into his sentence.  We affirm.

Discussion.  1.  Property under the larceny statute.  In a prosecution for larceny by false pretenses, the Commonwealth must prove that "(1) a false statement of fact was made; (2) the defendant knew or believed the statement was false when he made it; (3) the defendant intended the person to whom he made the false statement to rely on it; and (4) the person to whom the false statement was made did rely on it and, consequently, parted with property."  Commonwealth v. Occhiuto, 88 Mass. App. Ct. 489, 496-497 (2015), quoting from Commonwealth v. Cheromcka, 66 Mass. App. Ct. 771, 776 (2006).  On appeal, the defendant's arguments focus on the fourth element.  He asserts, for a variety of reasons, that the Commonwealth failed to establish that the BHA "parted with property" as that term is defined under G. L. c. 266, § 30(2).

Under that statute, "property" includes "money . . . [or] a deed or writing containing a conveyance of land, [or] any valuable contract in force."  G. L. c. 266, § 30(2), inserted by St. 1945, c. 282, § 2.  The defendant argues that this

definition does not include, or is at least ambiguous as to whether it includes a lease, particularly where the parties obtained what they bargained for, an apartment in exchange for rent. The defendant suggests that his false residency statement was merely a lease term, rather than a basis for having obtained this housing appropriation in the first instance. In the context of this case, we conclude otherwise.

The defendant did not gain possession of an ordinary rental unit. Here, the lease gave the defendant possession of a government subsidized housing unit below the fair market rental rate. The defendant obtained by false pretenses something of value for which he did not pay: the difference between the market rent for the apartment and the reduced rent he actually paid. The apartment the defendant took possession of is reserved for qualifying low-income individuals or families. There is a limited supply of such housing and the waiting list for eligible individuals is long, as evidenced by the defendant's almost five-year wait for a unit. When the BHA leased the apartment to the defendant, it allocated a scarce governmental resource to him, and did so on the basis of his indicating his intention to reside in the subsidized unit. Had the defendant not sworn to living in the apartment, he would not have obtained or qualified for subsidized housing.

The BHA lease to the apartment afforded the defendant, to the exclusion of qualified applicants, the right to occupy a government subsidized apartment for a renewable determined period of time.  See e.g. Black's Law Dictionary 800 (5th ed. 1979) (definition of lease includes "Contract for exclusive possession of lands or tenements for determinate period").  The defendant's promise to reside in the apartment and the BHA's assignment of the apartment to him on that basis constitutes a "valuable contract in force."[2]  See generally Commonwealth v. Gall, 58 Mass. App. Ct. 278, 287 (2003) (defendant's false statements induced two companies to part with an insurance policy that is a valuable contract in force).  See also Commonwealth v. Levin, 11 Mass. App. Ct. 482, 496 (1981) (same).  Where the defendant's representations induced the BHA to allocate a valuable benefit in the form of leasing an apartment to the defendant at a rate below market value, the property element of the larceny by false pretenses charge is properly met.  See Cheromcka, supra at 778-779 (The district paid bus drivers for services rendered not to the district, but to the defendant based on false time cards submitted by the defendant).

---

[2] Because we conclude that the lease in this case was a valuable contract in force, we do not decide whether the lease also constitutes a conveyance of "land."

Furthermore, we are not persuaded by the defendant's contention that, because he faithfully paid the rent and the BHA obtained the government subsidy for the unit, there was neither a theft of property nor a theft of property with any "pecuniary" value. The defendant paid below market rent for something worth more. He thus did obtain something of pecuniary value, the value of the difference between what he paid and rent at market value. The fact that the BHA still obtained its subsidy through the United States Department of Housing and Urban Development (HUD), is beside the point: through the defendant's misrepresentation he received something of pecuniary value worth more than the amount he paid.

The BHA is charged with allocating an extremely scarce resource to only qualified applicants. Part of that responsibility involves the requirement that eligible applicants reside in the housing provided, as that ensures the subsidy benefit is allocated to, and occupied by, only qualifying persons.

By representing that he intended to reside in the apartment, the defendant induced the BHA to part with a possessory interest of a limited, valuable, and highly sought after resource -- below market rate public housing. As a result of the defendant's pretense, the BHA allocated this commodity to the defendant, depriving a qualified individual from renting the

apartment.[3]  In essence, the BHA gave a financial benefit to someone who said he was what he was not -- a tenant entitled to subsidized housing.  See Gall, supra at 287 (deprivation of the "timely use of money" as the result of the defendant's false statements may also form the basis for larceny by false pretenses).

The defendant's contention that the occupancy was merely an unauthorized use, rather than a larceny, is similarly misplaced. First, the defendant's occupancy of the apartment was authorized -- albeit on the basis of the defendant's false representation to the BHA.  Moreover, the defendant did not merely misuse the unit but rather took exclusive possession of it for a predetermined renewable period of time.  Contrary to his assertion that his occupancy constitutes a use and not a taking, he displayed no intention on his part, nor was there any expectation on the part of the BHA, of his returning that possessory interest during the time he qualified for the

---

[3] It could be argued that the true "victim" in this case was not the BHA, but rather the next person on the list for subsidized housing.  In either case, the identity of the property owner is immaterial; the Commonwealth need only establish, beyond a reasonable doubt, "that the property belonged to someone other than the defendant."  Commonwealth v. Souza, 397 Mass. 236, 238 (1986).  See Commonwealth v. Aldrich, 88 Mass. App. Ct. 113, 115 (2015).  Cf. Commonwealth v. McGovern, 397 Mass. 863, 868 (1986) (in context of malicious destruction of property, "[i]t is immaterial whether the defendant knew the identity of the owner of the property").

subsidized housing.  Contrast Commonwealth v. Rivers, 31 Mass.
App. Ct. 669, 671 (1991) (no larceny where defendant dumped
waste in landfill without paying town fee, because town parted
with no property); Commonwealth v. Olivera, 48 Mass. App. Ct.
907, 908-909 (1999) (joy riding, which assumes use without
authority, but includes the return of the stolen vehicle to its
owner or abandoning it where it can be recovered is not larceny:
it does not show the requisite intent to deprive owner of
vehicle permanently).  In sum, the defendant obtained by false
pretenses the benefit of below-market rent on an apartment to
which he was not entitled, as that apartment was reserved for
occupancy by eligible individuals only.[4]

2.  Variance in the indictment.  Next, the defendant argues
that he was prejudiced because the indictment language varied
from the proof.  The defendant concedes that he did not raise
this issue at trial, and that review is limited to assessing
whether error, if any, has resulted in a substantial risk of
miscarriage of justice.  The indictment described the property
taken as "to wit:  approximately $23,778 in . . . subsidies, the
property of [HUD], by leasing [a]partment 791 at 36 Logan Way in
the [c]ity of Boston without residing therein."  The prosecutor

---

[4] We do not hold or intend to imply that where market rent
is paid and there is no pecuniary loss, any false statement of
any lease application amounts to the crime of larceny from the
landlord.

however, adduced proof that the property at issue included the lease, as well as the subsidies.

While larceny certainly requires proof that "property" was taken, the specific nature of the "res converted is not an element of [the offense]." Commonwealth v. Geane, 51 Mass. App. Ct. 149, 152 & n.5 (2001).[5] To the extent that an indictment includes unnecessary specifics about an element of the crime, such specifics constitute unnecessary "surplusage." Id. at 152. Here, the defendant took possession of subsidized housing by false pretenses; the dollar amount of the HUD subsidies as the property stolen was simply surplusage. There is no error posed by the form of the larceny indictment in relation to the proof at trial.

Furthermore, the indictment sufficiently apprised the defendant of the nature of the charges against him, so as to permit him to effectively prepare a defense. Compare id. at 151. It adequately conveyed the charge of falsely obtaining the right to reside in a subsidized rental unit by stating the apartment number, the name of the housing development, and the location of the housing development. Compare Stirone v. United

---

[5] See generally G. L. c. 277, § 25 ("If an indictment for a crime involving the commission or attempted commission of an injury to property describes the property with sufficient certainty in other respects to identify the act, it need not allege the name of the owner").

States, 361 U.S. 212 (1960) (indictment that related to commerce of sand into the state did not encompass commerce of steel out of the state); Commonwealth v. Ohanian, 373 Mass. 839, 842-844 (1977) (indictment involving checks drawn on one bank does not include checks drawn on an entirely separate bank).

The defendant makes no argument in his brief, nor could he, that he was surprised by the Commonwealth's position at trial that the property taken was the combination of the lease and the subsidies.  At the hearing on the defendant's motion to dismiss, eight months before trial, the prosecutor made clear that the lease was part of the property the government was alleging had been obtained through false pretenses.  The prosecutor stated specifically that the "defendant lied about his residency in order to get a subsidized lease and he did in fact get a subsidized lease based on that lie."  The prosecutor continued that the rent was "irrelevant" because what is at issue is that the defendant "obtained the lease" and "the lease has value." Given these statements, in combination with the defendant's failure to request a bill of particulars, and the lack of any evidence before or at trial of the defendant's confusion about the nature of the property stolen, it is clear the defendant was not prejudiced.

To the extent the defendant attempts to bolster his claim of prejudice by claiming that the prosecutor withheld the

Commonwealth's theory (i.e., that the property stolen included the lease) until closing argument, is unavailing. Here the closing argument was the Commonwealth's first opportunity to set out the substantive facts.

Moreover, the lack of objection to the argument is telling, and supports the notion that the Commonwealth maintained throughout the proceedings, that the property at issue was both the lease and the HUD subsidies. The allocation of the apartment at below-market rent, made possible by the HUD subsidies to the defendant, was a beneficial component of the bargain the defendant struck when he obtained the lease through false pretenses.

3. Restitution. The defendant argues, and the Commonwealth properly concedes that the restitution order did not hew to the necessary requirements. See generally Commonwealth v. McIntyre, 436 Mass. 829, 834 (2002) citing Commonwealth v. Rotonda, 434 Mass. 211, 221 (2001); and Commonwealth v. Denehy, 466 Mass. 723, 738-740 (2014). The purpose of restitution is to compensate the injured party for economic losses incurred as a result of the defendant's criminal conduct and that are documented by the victim.[6] Here, the judge

---

[6] There are several judicially imposed restrictions on the imposition of restitution, which include, that 1) it be connected to the crime; 2) it be limited to the economic loss of the victim; 3) there is evidentiary support for the order; and

ordered the defendant to pay $14,639, which represented the difference between the rent he actually paid and the rent he would have paid for a comparable nonsubsidized apartment. However, no evidence was adduced that this amount represented an economic loss incurred by the BHA. Nor was any evidence adduced that the amount of the HUD subsidy paid to the BHA was reduced as the result of leasing the apartment to the defendant, or that the BHA lost any rent. We therefore vacate the restitution order and remand the case for a further restitution hearing at which it can be determined whether the BHA suffered any economic loss as a result of the defendant's conduct. The absence of any such proof, however, does not alter our conclusion that property was taken when the BHA was induced by the defendant to allocate subsidized housing to an ineligible tenant.

4. Judge's statements at sentencing. During sentencing, the judge questioned why she should impose only a $25,000 fine and a $436 restitution order, because in her view, that amount was about equal to the HUD subsidy of which the defendant had had the benefit, so in effect, there would be no punishment. The inquiry was merely part of a discussion regarding the appropriate punishment given that the judge viewed the theft of public housing as a very serious crime. That the judge held

_____

4) there is an opportunity for hearing that includes the right of cross-examination and ability to rebut with other evidence. See id. at 737 n.20.

this view and took it into account was not improper but rather an appropriate component of that which is properly considered at sentencing.  See e.g. Commonwealth v. Derouin, 31 Mass. App. Ct. 968, 970 (1992), quoting from Commonwealth v. Coleman, 390 Mass. 797, 805 (1984) (appropriate considerations include the defendant's history and behavior and, perhaps most important, "the nature of the offense and the circumstances surrounding the commission of the crime").  See also Figgs v. Boston Housing Authority, 469 Mass. 354, 362 (2014) (discussing the importance "of promoting decent and affordable housing for all citizens").

Conclusion.  We affirm the judgments; however, we vacate the restitution order and remand the case for further proceedings consistent with this opinion.

So ordered.