NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-1216                                      Appeals Court

COMMONWEALTH  vs.  MOHAMMED T. KHAN.[1]

No. 16-P-1216.

Middlesex.     September 19, 2017. - November 28, 2017.

Present:  Vuono, Blake, & Singh, JJ.


Larceny.  Practice, Criminal, Required finding, Instructions to
    jury, Assistance of counsel.  Evidence, Joint venturer,
    Fingerprints.



    Indictments found and returned in the Superior Court
Department on May 21, 2014.

    The cases were tried before Diane M. Kottmyer, J.


    David H. Erickson for the defendant.
    Nicole Nixon, Assistant District Attorney, for the
Commonwealth.


    BLAKE, J.  Following a jury trial in the Superior Court,

the defendant, Mohammed T. Khan, was convicted of seven counts

of larceny over $250 from a person older than the age of sixty,

and was adjudged by the trial judge to be a common and notorious

_____
    [1] Also known as Mohammed T. Kann.

thief.[2]  The defendant appeals claiming that the judge erred in
(1) denying his motions for required findings of not guilty, (2)
instructing the jury on joint venture liability rather than
accessory after the fact, and (3) admitting fingerprint
evidence.  He also claims that his trial attorney was
ineffective.  We affirm.

Background.  In the light most favorable to the
Commonwealth, Commonwealth v. Latimore, 378 Mass. 671, 676-677
(1979), the jury could have found the following facts.

1.  The scam.  In February, 2014, each of the four victims
received telephone calls from individuals who claimed that the
victim's grandchild was in jail and needed money for bail.  The
caller directed the victims to send cash via FedEx packages to
addresses in Lowell, Massachusetts.  All of the calls originated
from a Canadian area code and none of the callers had a foreign
accent.

A.  Victim Johnson.[3]  On February 12, 2014, Johnson, an
eighty-six year old man living in Utah, received a telephone
call from a person identifying himself as Johnson's grandson,

---

[2] The defendant also was charged with two counts of
attempted larceny over $250 from a person older than the age of
sixty.  The Commonwealth filed a nolle prosequi as to one of
these counts and, as to the other, the judge entered a required
finding of not guilty at the close of the Commonwealth's case.

[3] We have omitted in our recitation some identifying
information that appears in the record.

Corbin, claiming that he was in jail and needed help. Shortly thereafter, Johnson received another telephone call from a person identifying himself as Mr. Watson. Watson claimed that Corbin had been in a motor vehicle accident and that, during a search, police found drugs in the vehicle. Johnson was directed to send $7,500 dollars in cash for Corbin's bail. Watson indicated he would arrange for pick-up of the cash and delivery through FedEx.

Johnson then received a telephone call from "the shipping department" and was provided with a name and shipping address: Arthur Smith, 218 Wilder Street, unit 32, Lowell. The package was to be delivered to Lowell before 8:00 A.M. the following day. The cash was placed in a yellow eight-by-ten-inch envelope addressed as instructed with Johnson's return address on the top left-hand corner. A FedEx employee arrived at Johnson's home. The yellow envelope was placed in a FedEx package and addressed as instructed.

The next morning, Johnson received another telephone call from Watson, who explained that while the cash had been received and Corbin had been cleared of the drug charges, the police also found a gun in the car. As a result of this serious charge, Watson explained that two lawyers would be necessary at the cost of $15,000 each and that Corbin's bail had been increased from $7,500 to $27,000. Watson said Corbin needed approximately

$50,000 that day. Johnson cobbled together another $42,000 dollars in cash[4] and sent it via FedEx to a name and address provided by Watson: Ryan Pederson, 282 Salem Street, apartment 9, Lowell. The money was packaged and sent in a similar fashion to the first cash payment.

The following day, Johnson received yet another telephone call from a person asking for the balance of the money owed. When Johnson telephoned his son to inquire about Corbin, Johnson realized he was the target of a scam. That same day, a person telephoned Johnson indicating that the money should be sent to an address in the Bronx, New York. Johnson did not send any more money and filed a police report.

B. <u>Victim Hobbs</u>. In February, 2014, Hobbs, an eighty-two year old woman who also lives in Utah, received a telephone call from someone who identified himself as a police officer named Stanley O'Reilly. O'Reilly asked Hobbs if she had a grandchild named Michael, reporting that Michael had been arrested and needed $7,500 for bail and other services. Hobbs packaged the money as instructed by O'Reilly. The next day a FedEx employee arrived to pick up the package. The package was addressed to Stanley O'Reilly at 282 Salem Street, apartment 9, Lowell. O'Reilly telephoned again the next day and told Hobbs that a gun

---

[4] Between Johnson and his wife, they also gathered another eight hundred dollars, but miscalculated that amount as $8,000, and thought they sent a total of $50,000.

had been found in Michael's automobile and an additional $50,000 was needed for bail.  Hobbs telephoned Michael's wife and learned that Michael was not in prison.  Hobbs notified police and provided O'Reilly's name and telephone number.

C.  <u>Victim Senior</u>.[5]  On January 28, 2014, Senior, an eighty-three year old woman from Texas, received a telephone call from someone she thought was her grandson, Tyler.  This person told Senior that he needed bail money after being involved in a hit-and-run automobile accident and asked that she call his attorney, David Hunter, at a telephone number he provided.  Senior telephoned Hunter who provided shipping instructions for the cash, which Senior followed.  Over two weeks in January and February of 2014, Senior received additional telephone calls asking her to send more money.  She sent between $70,000 and $90,000 via FedEx to addresses in Connecticut, Rhode Island, Pennsylvania, and Massachusetts.  She sent three packages to Massachusetts.  On February 11, 2014, Senior sent the first package containing $5,000 to David Williams at 151 Wood Street, apartment 7, Lowell.  On February 12, 2014, she sent the second package containing $6,500 to David Rowland at 104 Delmont Avenue, apartment 20, Lowell.  On February 13, 2014, she sent

---

[5] Senior's testimony was read to the jury by the prosecutor with the agreement of defense counsel.

the third package containing $5,600 to Tyler Jacobs at 218 Wilder Street, apartment 32, Lowell.

D. <u>Victim Klein</u>. On February 13, 2014, Klein, a sixty-seven year old woman from Utah received a telephone call from someone who identified himself as Detective Jonathan Watson. Watson told Klein that her grandson had been in an automobile accident and that drugs were found in the vehicle. Klein was asked to send $7,500 for a "bail bondsman." Watson instructed Klein to go to the bank and provided her with a telephone number with a 438 area code[6] to call for further instructions.

Klein received a second telephone call from someone claiming to be a police officer who provided shipping instructions. She addressed the package to Daniel McLean at 104 Belmont Avenue, unit 20, Lowell, although it should have been 104 Delmont Avenue. On February 14, 2014, Klein received a telephone call reporting that a gun had been found and that it was believed to have been used in a number of robberies. Klein was told her grandson's bail had been increased to $37,000. She sent another package with $24,000 to an address Watson provided in the Bronx, New York. The next day Klein told her husband

---

[6] The parties stipulated that the area code 438 "is an exchange assigned to telephones, landline and cellular, that become active in the region centered around Montréal, Quebec and Canada."

what was happening.  They telephoned the police and then FedEx to stop the package, but they were unsuccessful.

2.  Khan's role in the scam.  In February, 2014, Khan told his friend, Franklin Murungi, that FedEx would be delivering packages to Murungi's address at 218 Wilder Street and to Murungi's wife, Dorothy Mutembei's address at 104 Delmont Avenue, both located in Lowell.  Khan told Murungi that he needed to use these addresses because Khan had been receiving a lot of packages from FedEx to his apartment.  Khan told Murungi that the packages contained driving records from friends in Africa who were coming to live in the United States.  On February 13, 2014, Murungi told Khan a package had been delivered.  Khan arrived at Murungi's home early the next morning to retrieve the package.  Murungi agreed to drive Khan to a house at 282 Salem Street in Lowell.  During the ride, Murungi overheard Khan talking on the telephone to his sister. The telephone conversation was about a package that had been delivered.  Khan was overheard telling his sister that he was on the way to the address.  When the telephone call ended, Khan told Murungi that he no longer needed to go to Salem Street as FedEx had already attempted delivery of the package.  Instead, he asked Murungi to take him to Murungi's wife's address at 104 Delmont Avenue as a package had been delivered and was ready for pick-up.  Murungi telephoned his wife and learned that a package

had been delivered to the apartment complex office.  Murungi drove Khan to the complex where he retrieved the package and Murungi then dropped Khan off at his house with the FedEx packages.

Two FedEx employees confirmed that they had delivered packages on February 13 and 14, 2014.  The first employee handed a package on February 13, 2014, to a man at 218 Wilder Street, Lowell, who had hearing aids in both ears.[7]  The next day, she delivered another package to 282 Salem Street, apartment 9, Lowell, to a different man.  She attempted to deliver a second package to that address later that day but no one was at the apartment to accept delivery.  In the interim, someone telephoned to have the package redelivered.  The second FedEx employee testified that he took the package and delivered it.

On February 21, 2014, search warrants were executed at both 282 Salem Street and 218 Wilder Street in Lowell.  No FedEx packages or paperwork was discovered at those locations.  Lowell police Detective Gary Dillon spoke with Murungi both at 218 Wilder Street and at the police station.  When asked about receiving any packages, Murungi brought up a person by the name of "Moe," whose last name began with a "K."  This person lived at 18 Belmont Street, apartment 12 in Lowell.  Dillon, along with other police officers, went to the Belmont Street

---

[7] Khan has a hearing aid in each ear.

apartment.  Khan answered the door and let the police officers into the apartment.  Khan's sister and her husband were also present in the apartment.  Dillon informed Khan that the police were there to investigate a scam involving the shipment of packages through FedEx.

Khan claimed that a cousin or an uncle from Canada had shipped paperwork to Khan from Liberia to be able to get licensed in the United States.  He told Dillon that he did not have any of the paperwork in the apartment.  While Dillon was speaking to Khan, Khan also was having a conversation with his sister in a language Dillon did not understand.  Although Dillon asked Khan to speak to his sister in English so Dillon could understand their conversation, Khan did not do so.[8]

After receiving written consent from Khan to search the apartment, an opened FedEx package was found on the corner of Khan's bed.  The package was addressed to Arthur Smith, 218 Wilder Street, apartment 32 in Lowell.  The return address was Johnson's Utah address.  Sandwiched between the opened FedEx package and the eight-by-ten-inch yellow envelope was a white envelope.  The envelopes were photographed and later sent to the Massachusetts State police laboratory for fingerprint analysis.  When asked about the package, Khan told Dillon that his cousin

---

[8] Khan testified that he spoke to his sister in his native dialect, Fula, to ask her what she wanted him to say and that she instructed him to falsely mention a cousin.

or uncle would send a white male to pick up the packages from Khan once received and that sometimes he let this person into his bedroom with the packages. Khan reported that he received about eight to ten packages at addresses on Delmont Avenue, Wilder Street, and Salem Street. The detectives did not find any cash. Dillon arrested Khan and, as he was leaving the apartment, Khan's sister asked him about the possibility of bail, in English. Processing of the package sent for analysis revealed a fingerprint on the white envelope consistent with Khan's right thumbprint.

At trial, Khan testified that his fingerprint was on the white envelope because he gave the envelope, containing $200, to his sister as payment for Liberian licenses for him and his roommate. He also claimed that at the time that he gave her the white envelope, he also gave her the FedEx package that was sent by Johnson. When Khan was asked why he lied to the officers about who sent the packages, he claimed that he was protecting his sister who asked him to furnish her with addresses. Khan further claimed that he did not know of the underlying scheme and received no economic benefit from it.

Discussion. 1. Sufficiency of the evidence. Khan claims that the judge improperly denied his motions for required findings of not guilty made at the close of the Commonwealth's case and again at the close of the evidence. He argues that the

evidence was insufficient to prove that he participated as a joint venturer in the underlying scheme. We review the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Latimore, 378 Mass. at 677. Reasonable inferences may be drawn from the evidence, Commonwealth v. Bush, 427 Mass. 26, 30 (1998), and need only be reasonable and possible, not necessary or inescapable. Commonwealth v. Morgan, 449 Mass. 343, 349 (2007).

To establish the defendant's guilt as a joint venturer to the larceny scheme, the Commonwealth must prove, beyond a reasonable doubt, that "the defendant knowingly participated in the commission of the crime," with "the intent required for that offense." Commonwealth v. Zanetti, 454 Mass. 449, 466 (2009). See Commonwealth v. Bright, 463 Mass. 421, 435 (2012), quoting from Commonwealth v. Braley, 447 Mass. 316, 320 (2007) (joint venture "may be proved by circumstantial evidence"). Here, the necessary intent is the intent to obtain money from another, sixty years of age or older, by false pretenses by making false statements oneself or by having false statements made by a joint venturer, with the intent that the person, in reliance on the false statements, would part with money. G. L. c. 266, § 30(5).

See Commonwealth v. St. Hilaire, 470 Mass. 338, 343, 348 (2015); Commonwealth v. Alvarez, 90 Mass. App. Ct. 158, 159-160 (2016).

Intent may be inferred from "the defendant's knowledge of the circumstances and subsequent participation in the offense." Commonwealth v. Cohen, 412 Mass. 375, 381 (1992) (citation omitted). "Participation may take the form of an agreement to be available to assist in the commission of the crime. Such agreement need not 'be made through a formal or explicit written or oral advance plan or agreement; it is enough consciously to act together before or during the crime with the intent of making the crime succeed.'" Bright, supra, quoting from Zanetti, supra at 470.

When viewed in its totality, the evidence presented, including Khan providing his friends' addresses to use for deliveries, his attempts to be present at these addresses to accept delivery in person, the timing of the telephone calls to the victims when compared to the delivery dates of the packages, the corresponding addresses on the packages consistent with the telephone callers' instructions to the victims, Khan's interaction with police, and the discovery of FedEx packaging on his bed and the fingerprint on the white envelope establish that Khan knowingly participated in a larcenous scheme and shared an intent to defraud the victims of money. There was no error in

denying the defendant's motion for required findings of not guilty at the close of the Commonwealth's case.

Khan's testimony, which the jury were free to discredit, was that he thought the packages contained Liberian licenses. See Commonwealth v. Platt, 440 Mass. 396, 404 (2003). This evidence did not cause the Commonwealth's case to deteriorate as "everything turned on the credibility" of the defendant.[9] Id. at 397 n.1. Accordingly, the motion for required findings of not guilty at the close of the evidence also was properly denied. See Commonwealth v. Berry, 68 Mass. App. Ct. 78, 81 (2007).

2. Jury instructions. The defendant argues that the judge improperly instructed the jury on joint venture, and instead should have instructed them on the uncharged offense of

---

[9] Khan claims that although the circumstantial evidence presented may support an inference that he was aware of the underlying scheme and took part in inducing the victims to pay money, it also equally supports the inference that he was picking up packages as a favor to his estranged sister for a scheme of which he was unaware. See Commonwealth v. O'Brien, 305 Mass. 393, 400 (1940), quoting from Smith v. First Natl. Bank in Westfield, 99 Mass. 605, 612 (1868) ("When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof"). The defendant's reliance on this principle fails because it assumes that the jury were required to believe his testimony, which they were not. See Commonwealth v. Triplett, 398 Mass. 561, 567 (1986) ("The fact finder, not the witness, must determine the weight and credibility of testimony").

accessory after the fact.[10]  He contends that the principal crime was an inducement to part with property under false pretenses, see G. L. c. 266, § 34, and that therefore the crime was completed when FedEx picked up the packages from the victims. Because the defendant's actions in the scam allegedly began after that point, he argues, he should have been charged as an accessory after the fact.  This argument fails because the defendant was not charged under c. 266, § 34, but under c. 266, § 30, which criminalizes the act of obtaining the property of another by false pretenses with intent to defraud.  Thus, the crime was complete when Khan obtained the property of another, here, the money.

The defendant also not only failed to object to the trial judge's instructions, he joined in the Commonwealth's request for the given instruction.  Indeed, even if the defendant had properly preserved a request for a jury instruction on the offense of accessory after the fact, such an instruction would not have been given because that crime was not charged, and the instruction would have risked confusing the jury.  Commonwealth v. Newson, 471 Mass. 222, 234 (2015).  There was no error, and

---

[10] The defendant also claims that if he had been charged as an accessory after the fact, he would have been entitled to assert a consanguinity defense at trial.  See G. L. c. 274, § 4. Consanguinity can only be asserted as an affirmative defense to a charge of accessory after the fact to a crime committed by a family member.  Commonwealth v. Iacoviello, 90 Mass. App. Ct. 231, 247 (2016).  The evidence did not support such a charge.

therefore no substantial risk of a miscarriage of justice.
Compare Commonwealth v. St. Louis, 473 Mass. 350, 360 (2015).
Contrast Commonwealth v. Ford, 424 Mass. 709, 712 (1997).

3. Admissibility of fingerprint. Khan's argument that the
fingerprint analysis on the white envelope was not relevant,
misleading, and more prejudicial than probative is unavailing.[11]
Because the objection was preserved, we review for prejudicial
error. See Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994).

Whether evidence is relevant and whether its probative
value is substantially outweighed by the prejudicial effect is
in the "trial judge's broad discretion and [is] not disturbed
absent palpable error." Commonwealth v. Simpson, 434 Mass. 570,
579 (2001). During a bench conference, the judge determined
that the configuration of the white envelope, sandwiched between
the FedEx package and the yellow envelope sent by Johnson, was
probative of the defendant's participation and knowledge of the

---

[11] Defense counsel also objected to the admission of the
photograph that showed the configuration of the white envelope
to the FedEx package that was sent by Johnson. Defense counsel
contended that the admission of the photograph was prejudicial
because the detective who first saw the configuration of the
envelope and the package did not testify. This argument is
unavailing. The judge correctly determined that the witness
substitution did not go to the admissibility of the photograph
but rather to the credibility of the evidence, as it was an
issue of authentication. See Commonwealth v. Zitano, 23 Mass.
App. Ct. 403, 407 (1987) ("Any deficiencies in the foundation
laid for the admission . . . would affect only the weight to be
afforded that evidence"). See also Commonwealth v. Caruso, 476
Mass. 275, 287 n.8 (2017).

underlying scheme. Also, the fingerprint was not the singular evidence that the Commonwealth presented. See Commonwealth v. Morris, 422 Mass. 254, 257 (1996) ("Fingerprint evidence coupled with other evidence may rationally link a defendant to a crime"). Furthermore, even if error, the defendant cannot claim prejudice when defense counsel used the fingerprint evidence to support his theory that Khan was acting at the direction of his sister and that the packages contained driver's licenses. Cf. Commonwealth v. Keo, 467 Mass. 25, 33 (2014) (admission of testimony on another defendant's state of mind not prejudicial when it supported defendant's theory of case).

4. Ineffective assistance of counsel. Khan claims that his trial counsel was ineffective for failing to investigate the Canadian fraud scheme, not seeking an accessory after the fact jury instruction in a pretrial motion, failing at trial to request this same jury instruction, and by not calling a police detective as a witness. Khan raises this claim in its weakest form, having failed to file a motion for new trial in the Superior Court. See Commonwealth v. Diaz, 448 Mass. 286, 289 (2007). A review of the record does not reveal patently ineffective or manifestly unreasonable lawyering. See generally Commonwealth v. Saferian, 366 Mass. 89, 96 (1974).

As to the failure to investigate claim, additional fact finding would be necessary to evaluate this claim and we will

not review an issue outside of the trial record.  Commonwealth v. Brookins, 416 Mass. 97, 104 (1993).  As addressed supra, the facts did not support a charge of accessory after the fact.  Accordingly, any pretrial or trial motion would have been futile.  See Commonwealth v. Hanson, 79 Mass. App. Ct. 233, 237-238 (2011).  Nor has Khan shown his trial counsel was ineffective for failing to call a police detective as a witness, as his testimony, at best, would have been cumulative.  See Commonwealth v. Britto, 433 Mass. 596, 602 (2001).

Judgments affirmed.